IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., PATRICK C. KANSOER, SR., DONALD W. SONNE and JESSICA L. SONNE, <br><br> Plaintiffs, <br><br> v. <br><br> VILLAGE OF MORTON GROVE and RICHARD KRIER, President, <br><br> Defendants. | ) ) ) ) ) ) ) ) Civil Action No.  8 C 3694 ) ) Hon. Harry D. Leinenweber ) ) ) ) |

**MEMORANDUM IN SUPPORT OF MOTION
FOR FINDING OF RELATEDNESS AND TO REASSIGN
AND CONSOLIDATE PURSUANT TO LOCAL RULE 40.4**

Plaintiffs, NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., PATRICK C.

KANSOER, SR., DONALD W. SONNE and JESSICA L. SONNE, (collectively "Plaintiffs")

request that the following three cases before the United States District Court for the Northern

District of Illinois, Eastern Division be considered related and also reassigned and consolidated:

(1) the present action against the Village of Morton Grove and Richard Krier, President (the

"Morton Grove Complaint"); (2) *National Rifle Assoc. of America, Inc., Alan L. Miller, Jonathan*

*Blair Garber and Kevin P. Stanton v. City of Evansoton and Lorraine H. Morton, Mayor* Case

No. 08-CV-3693 ("the Evanston Complaint"); and (3) *National Rifle Assoc. of America, Inc.,*

*Robert Klein Engler and Dr. Gene A. Reisinger v. Village of Oak Park and David Pope,*

*President,* Case No. 08-CV-3696 (the "Oak Park Complaint").[1]  The Plaintiffs in each of the

cases supports and requests reassignment and consolidation.

---

[1]    A copy of the Morton Grove Complaint is attached hereto as Exhibit 1.  A copy of the Evanston
Complaint is attached hereto as Exhibit 2.  A copy of the Oak Park Complaint is attached hereto as
Exhibit 3.

These three associated cases are related because they involve common questions of law and fact and consolidation and reassignment of these cases is appropriate because they are all pending in this district, their consolidation will save judicial time and effort, reassignment and consolidation will not substantially delay the proceedings and the cases are susceptible to disposition in a single proceeding.

## Factual Background

The Morton Grove Complaint, Evanston Complaint and the Oak Park Complaint all center on a common issue of law and arise out of the same set of operative facts.   In each case, the respective Plaintiffs challenge a handgun prohibition and bring suit against the respective municipalities and officers.  The three handgun prohibitions are strikingly similar:

- The Village of Morton Grove prohibits possession of a handgun.  "No person shall possess, in the village of Morton Grove the following … C. Handguns: Any handgun, unless the same has been rendered permanently inoperative."  Village of Morton Grove Municipal Code, § 6-2-3(c).   "HANDGUN: Any firearm which is designed or redesigned, made or remade, and intended to be fired while held in one hand or having a barrel of less than ten inches (10") in length or a firearm of a size which may be concealed upon the person." §6-2-1.  The restriction has certain exceptions. (Morton Grove Complaint, ¶¶11-15.)

- The City of Evanston prohibits possession of a handgun.  "No person shall possess, in the City of Evanston any handgun, unless the same has been rendered permanently inoperative."  Evanston City Code, § 9-8-2.  "HANDGUN: Any firearm which: a) is designed or redesigned or made or remade, and intended to be fired while held in one hand or b) having a barrel of less than ten inches (10") in length or c) a firearm of a size which may be concealed upon the person."  § 9-8-1.  Violation is a misdemeanor punishable by fine of not less than $1,500 and/or incarceration for up to six months.  § 9-8-6(A).  Any handgun is to be confiscated and destroyed.  § 9-8-6(B).  The restriction has certain exceptions.  (Evanston Complaint, ¶¶ 10-13.)

- The Village of Oak Park prohibits possession of a handgun.  "It shall be unlawful for any person to possess or carry, or for any person to permit another to possess or carry on his/her land or in his/her place of business any firearm . . . ."  Oak Park Municipal Code, § 27-2-1.  "FIREARMS: For the purpose of this Article firearms are: pistols, revolvers, guns and small arms of a size and character that may be concealed on or about the person, commonly known as handguns." § 27-1-1.  The restriction has certain exceptions.  (Oak Park Complaint, ¶¶ 10-15.)

Additionally, the facts concerning Plaintiffs' challenges are virtually identical. In each case, but for the regulations, Plaintiffs would lawfully obtain handguns to keep at home for lawful self-protection. (Evanston Complaint, ¶ 16; Morton Grove Complaint, ¶ 18; Oak Park Complaint, ¶ 18.) If Plaintiffs were to do so in spite of the regulations they would face arrest, prosecution, imprisonment and fines. (*Id.*) In each case, the Plaintiffs either travel through or need to travel through the respective municipalities. (Evanston Complaint, ¶ 17; Morton Grove Complaint, ¶ 19; Oak Park Complaint, ¶ 19.) Additionally, the Plaintiffs are subject to irreparable harm in that they are unable to obtain handguns to protect themselves in their homes, subjecting them to endangerment and violating their constitutional rights. (Evanston Complaint, ¶ 20; Morton Grove Complaint, ¶ 22; Oak Park Complaint, ¶ 22.)

As this Court is undoubtedly well aware, the United States Supreme Court recently decided the case of *District of Columbia v. Heller*, No, 07-290 (S. Ct. June 26, 2008) which struck down the District of Columbia's ban on handgun possession and held that the Second Amendment guarantees an individual's right to own a gun for, among other things, self defense. In light of this recent ruling, Plaintiffs all challenge the constitutionality of the handgun prohibitions as well as the legality of such prohibitions in light of 18 U.S.C. §926A, the Firearms Owners' Protection Act ("FOPA").

### Argument

Pursuant to Rule 42 of the Federal Rules of Civil Procedure:

> when actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 41.

Additionally, Local Rule 40.4 provides that civil cases are related if: (1) the cases involve the same property; (2) the cases involve some of the same issues of fact or law; (3) the cases grow out of the same transaction or occurrence; or (4) in class action suits, one of more of the classes involved in the cases is or are the same." L.R. 40.4(a). And, under Local Rule 40.4, a case may be reassigned to the calendar of another judge "if it is found to be related to an earlier-numbered case assigned to that judge" and so long as the following criteria are met:

> (1) both cases are pending in this Court; (2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort; (3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and (4) the cases are susceptible of disposition in a single proceeding.

L.R. 40.4(b).

## I.    The Three Cases Involve Common Questions of Law and Fact

The three cases which Plaintiffs seek to consolidate and reassign are related; they involve common questions of law and fact. *See, e.g.,* L.R. 40.4(a)(2); *Fairbanks Capital Corp. v. Jenkins,* No. 02-C-3930, 2002 U.S. Dist. LEXIS 26297 (N.D. Ill. Nov. 25, 2002); *Freeman v. Bogusiewicz,* No. 03-C-2908, 2004 U.S. Dist. LEXIS 15723 (N.D. Ill. August 10, 2004). Each of the complaints alleges as its first count violations of the Second and Fourteenth Amendments and in the second count, violations of the Fourteenth Amendment's equal protection guarantee. The complaints also allege violations of FOPA. The resolution of these claims all necessarily involve application of the Supreme Court's recent decision in *Heller.* Thus, the legal issues involved are more than related, they are identical.

Additionally, and as set out above, the facts involved in the cases are the same. In each case, the respective municipality has in place a regulation prohibiting possession of a handgun. And, the respective Plaintiffs in each case, but for the handgun prohibitions, would lawfully

obtain handguns for lawful purposes, including self-protection.  The respective Plaintiffs all face

arrest, prosecution, imprisonment and fines if they engage in such activities in light of the current

restrictions.  And, the respective Plaintiffs all claim that they are subject to the same irreparable

harm in that they are unable to obtain handguns to protect themselves in their homes.

Each of the cases also involves a common Plaintiff, the NRA.  Moreover, to the extent

that the cases involve slightly differently worded handgun prohibitions, that fact does not

prohibit consolidation and reassignment.  This Court recognizes that "cases need not be

absolutely identical to be related for purposes of LR 40.4.  If some of the same issues of fact or

law are common, that can be sufficient to establish relatedness."  *Global Patent Holdings, LLC v.*

*Green Bay Packers, Inc.,* 00-C-4623, 2008 U.S. Dist. LEXIS 33296 at **9 (N.D. Ill. April 23,

2008); *Fairbanks,* 2002 U.S. Dist. LEXIS 26297, at *7 (Rule 40.4(a) does not require complete

identity of issues in order for case to be related); *Lawrence E. Jaffe Pension Plain v. Household*

*Int'l, Inc.,* 02-C-5893, 2003 U.S. Dist. LEXIS 7466, at *4 (holding that relatedness can be shown

as long as the cases "involve *some* of the same issues of fact or law) (emphasis in original).  Just

as in *Global Patent,* where this Court found relatedness, the complaints here "share a factual

foundation." 2008 U.S. Dist. LEXIS 33296, at *9.   As a result, the cases here are related.

## II.    Consolidation of the Three Cases Satisfies the Requirements of Local Rule 40.4

In addition to the complaints being related, consolidation of the three matters also meets

the requirements of L.R. 40.4(b): the cases are all pending in this district, their consolidation will

save judicial time and effort, reassignment and consolidation will not substantially delay the

proceedings and the cases are susceptible to disposition in a single proceeding.

First, as in *Global Patent,* one "need look no further than to the respective dockets to

conclude that the first and third conditions of LR 40.4(b) are satisfied."  2008 U.S. Dist. LEXIS

33296, at *11.  The three cases here are all pending before the Northern District of Illinois, Eastern Division and thus, the first requirement is met.

Second, and with respect to L.R. 40.4(b)(3), the cases are all in their infancy.  *See, e.g., Teacher's Retirement Sys. of Louisiana v. Black,* No. 04-C-834, 2004 U.S. Dist. LEXIS 10259, at *7 (N.D. Ill. May 27, 2004).  The complaints were only recently filed, little judicial effort has been expended, no case management schedules are set and no discovery has taken place.  As a result, the cases have not progressed to the point where treating them as related would be likely to substantially delay the proceedings.  *See, e.g., Global Patent,* 2008 U.S. Dist. LEXIS 33296, at *11 (finding that substantial delay from consolidation and reassignment was unlikely where no discovery had taken place and little judicial effort had been expended).[2]

Third, the reassignment and consolidation of these cases will save judicial time and effort.  The allegations and claims in each of the cases are virtually identical.  The cases all involve the same constitutional and statutory issues.  To have multiple judges considering and ruling upon the same constitutional and statutory questions is not only duplicative, but wastes this Court's judicial resources.  *See, e.g., Global Patent,* 2008 U.S. Dist. LEXIS 33296, at *11 (holding that duplicative treatment of claim construction results in unnecessary consumption of judicial time, effort and cost).  The cases all allege violations of the Second and Fourteenth Amendments, the equal protection guarantee, and FOPA.  The cases all hinge on resolution of the same constitutional question and the application of the same recent Supreme Court case.  The statutory interpretation required by the cases is identical.  In short, the legal theories involved are

---

[2]    The instant motion is properly before this Court. LR 40.4's "general commentary concerning the timing of motions to reassign, by its terms, does not prohibit the reassignment or consolidation of cases prior to the filing of a responsive pleading." *KPASA, LLC, United States of America,* No. 04-C-109, 2004 U.S. Dist. LEXIS 8720, at * 13 (N.D. Ill.  May 13, 2004); *Freeman,* 2004 U.S. Dist. LEXIS 15723, at **3-4 ("L.R. 40.4(c) does not explicitly require that a motion for relatedness and reassignment be made only after a party answers or otherwise pleads").

the same and the same relevant inquiries will need to be made in addressing the allegations of each complaint.

The question of law at the heart of each case is identical: whether the handgun prohibition is constitutional and lawful. Because none of the cases can be resolved without answering the same common question of law, "significant judicial efficiency will result from having one judge handle all [ ] of the cases." *Fairbanks,* 2002 U.S. Dist. LEXIS 26297, at *8 (finding that judicial efficiency requirement met where none of the cases could be decided without determining legality of similar practice). Moreover, the cases all allege the same irreparable harm and seek identical remedies of declaratory judgment and injunctive relief.

The cases will also require the same legal findings and the summary judgment motions will likely be identical given that they will be filed by the same law firms. *See, e.g., Murry v. America's Mortgage Banc, Inc.,* No. 03-C-5811, 2004 U.S. Dist. LEXIS 3148, at *7 (N.D. Ill. Feb. 27, 2004) (finding fact that same law firm would likely file identical briefs in each case as relevant to inquiry as to whether reassignment would promote judicial economy). A substantial saving of judicial time and effort will result from having the issues briefed and determined once, rather than three times, and it will also save the parties and their counsel time and effort. *Fairbanks,* 2002 U.S. Dist. LEXIS 26297, at *8 (holding that overall administration of justice enhances when single judge decides issue for multiple related cases). And, to the extent any discovery takes place, such would cover identical topics as would any potential expert analysis. Unlike cases where reassignment has been denied, these cases do not require individualized proof and unique defenses. *Cf., Donahue v. Elgin Riverboat Resort,* 04-C-816, 2004 U.S. Dist. LEXIS 19362, at **9-10 (N.D. Ill. Sept. 27, 2004). As a result, a unified proceeding is not only

appropriate but it is also the best way for this Court to fully analyze and apply the recent precedent and to determine whether the requested relief is appropriate.

Finally, the three related cases are susceptible to disposition in a single proceeding. The cases all involve fundamentally similar claims, and anticipated defenses, that are "amenable to dispositive treatment in a unified proceeding." *See, e.g., Global Patent,* 2008 U.S. Dist. LEXIS 33296, at **12-13. As demonstrated above, because the cases involve identical constitutional claims as well as the same statute, there exists no reason to consider these cases on an individual basis. *Freeman,* 2004 U.S. Dist. LEXIS 15723, at **6-7 (finding that cases are susceptible of disposition in a single proceeding where the facts and issues in both cases are similar in nature and can be handled more efficiently in one proceeding). Additionally the irreparable harm alleged in each of the complaints, as well as the relief requested, is identical as are the questions of law presented. Therefore, resolution of the common issues in one case would be outcome determinative of the same issues in the other cases. *See, e.g, Fairbanks,* 2002 U.S. Dist. LEXIS 26297, at **9-11 (holding that LR 40.4(b)(4) was satisfied where a determination of the key, common legal and factual issues would be outcome determinative to all the cases). Resolving these cases in a single proceeding is not only plausible but, given the considerations of judicial economy, is desirable as well.

## **Conclusion**

*National Rifle Assoc. of America, Inc., et al. v. Village of Morton Grove, et al., National Rifle Assoc. of America, Inc., et al. v. Evanston, et al.,* and *National Rifle Assoc. of America, Inc., et al. v. Village of Oak Park, et al.,* are related cases in that they involve similar questions of law and fact. Additionally, consolidation and reassignment of these cases is appropriate because they are all pending in this district, their consolidation will save judicial time and effort,

reassignment and consolidation will not substantially delay the proceedings and the cases are susceptible to disposition in a single proceeding. Therefore, Plaintiffs respectfully request that this Court grant the Motion for Finding of Relatedness and to Reassign and Consolidate and for such other relief as this Court deems just and appropriate to consolidate *National Rifle Assoc. of America, Inc., Alan L. Miller, Jonathan Blair Garber and Kevin P. Stanton v. City of Evansoton and Lorraine H. Morton, Mayor* Case No. 08-CV-3693 and *National Rifle Assoc. of America, Inc., Robert Klein Engler and Dr. Gene A. Reisinger v. Village of Oak Park and David Pope, President,* Case No. 08-CV-3696 with this case, as it is the earliest filed case given the exigency of a *Motion for Recusal* pending in the *National Rifle Association of America, Inc., et al. v. City of Evanston,* Docket No. 08 CV 3693 (attached hereto as "Exhibit 4").

Dated: July 25, 2008                    Respectfully Submitted,

                                        **NATIONAL RIFLE ASSOCIATION**
                                        **OF AMERICA, INC., JONATHAN BLAIR**
                                        **GARBER, ALAN L. MILLER and**
                                        **KEVIN P. STANTON,**
                                        Plaintiffs


                                        BY:___s/ William N. Howard_____
                                                One of Their Attorneys

Local Counsel:
William N. Howard, Esq.
**FREEBORN & PETERS LLP**
311 S. Wacker Dr., Suite 3000
Chicago, Illinois   60606
(312) 360-6415

Stephen P. Halbrook, Esq.
10560 Main St., Suite 404
Fairfax, VA  22030
(703) 352-7276
*(Pro Hac Vice pending)*

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys of record for Plaintiffs, certifies that he caused a copy of this instrument referenced herein to be delivered to LaSalle process Servers to obtain service upon the parties of record, as shown below, the **25**[rd] day of **July, 2008**:

Village of Morton Grove                     Richard Krier, President
c/o  Richard Krier, President of Village Clerk     Village of Morton Grove
6101 Capulina Ave.                          6101 Capulina Ave.
Morton Grove, IL  60053                     Morton Grove, IL  60053


                    s/ William N. Howard

 Local Counsel:
William N. Howard, Esq.
**FREEBORN & PETERS LLP**
311 S. Wacker Dr., Suite 3000
Chicago, Illinois  60606
(312) 360-6415


Stephen P. Halbrook, Esq.
10560 Main St., Suite 404
Fairfax, VA  22030
(703) 352-7276
(Pro Hac Vice pending)

# EXHIBIT "1"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., PATRICK C. KANSOER, SR., DONALD W. SONNE and JESSICA L. SONNE, | ) ) ) | FILED: JUNE 27, 2008<br>08CV 3694<br>JUDGE LEINENWEBER<br>MAGISTRATE JUDGE VALDEZ<br>EDA |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. |
| VILLAGE OF MORTON GROVE and RICHARD KRIER, President, | ) ) ) | |
| Defendants. | ) ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

Plaintiffs, NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., PATRICK C. KANSOER, SR., DONALD W. SONNE and JESSICA L. SONNE, by and through their attorneys, Stephen P. Halbrook, Ph. D. and William N. Howard (the latter of Freeborn & Peters LLP), as and for their complaint against Defendants, the VILLAGE OF MORTON GROVE and RICHARD KRIER, its President, state as follows:

1.     This is an action to vindicate the rights of residents of Morton Grove, Illinois, to keep and bear arms as guaranteed by the Second and Fourteenth Amendments to the United States Constitution, which guarantees the right of law-abiding citizens to keep handguns in the home for lawful defense of their families and other lawful purposes.

**PARTIES**

2.     Plaintiff National Rifle Association of America, Inc. (hereafter "NRA") is a non-profit association incorporated under the laws of New York, with its principal place of business in Fairfax, Virginia.  NRA has a membership of 4 million persons.  Numerous NRA members reside in or travel through Morton Grove, Illinois.  The purposes of NRA include protection of the right of

citizens to have firearms for the lawful defense of their families, persons, and property, and to promote public safety and law and order. NRA brings this action on behalf of itself and its members.

3.   Plaintiff, Patrick C. Kansoer, Sr., is a resident of Morton Grove, Illinois, a citizen of the United States, and a member of the NRA.

4.   Plaintiff, Donald W. Sonne, is a resident of Morton Grove, Illinois, a citizen of the United States, and a member of the NRA.

5.   Plaintiff, Jessica L. Sonne, is a resident of Morton Grove, Illinois, a citizen of the United States, and a member of the NRA.

6.   Numerous members of Plaintiff NRA who are citizens of the United States but not residents of Morton Grove frequently travel through Morton Grove, Illinois.

7.   Defendant Richard Krier ("Krier") is the Mayor of the Village of Morton Grove, which is his principal place of business. He is being sued in his official capacity.

8.   Defendant, Village of Morton Grove, is a political subdivision of the State of Illinois. Krier and the Village of Morton Grove and their officers, agents and employees are sometimes hereinafter referred to as "Defendants."

## JURISDICTION

9.   Jurisdiction is founded on 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(3) in that this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of Illinois and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

2

10.     This action seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983. Venue lies in this district pursuant to 28 U.S.C. § 1391(b).

## BACKGROUND

11.     The Village of Morton Grove prohibits possession of a handgun. "No person shall possess, in the village of Morton Grove the following: . . . C. Handguns: Any handgun, unless the same has been rendered permanently inoperative." Village of Morton Grove Municipal Code, § 6-2-3(C). "HANDGUN: Any firearm which is designed or redesigned, made or remade, and intended to be fired while held in one hand or having a barrel of less than ten inches (10") in length or a firearm of a size which may be concealed upon the person." § 6-2-1.

12.     A first offense is punishable by a fine of not less than $50 or more than $500. § 6-2-3(D)(2).  A subsequent offense is a misdemeanor punishable by a fine of not less than $100 or more than $500, or by incarceration for up to 6 months. *Id.*  Upon conviction, any weapon seized is confiscated and destroyed. § 6-2-3(D)(3).

13.     The handgun prohibition does not apply to "Licensed gun collectors." § 6-2-3(C)(6).  "LICENSED FIREARM COLLECTOR: Any person licensed as a collector by the Secretary of the Treasury of the United States under and by virtue of Title 18, United States Code, section 923." § 6-2-1.

14.     The handgun prohibition is further inapplicable to: "Licensed gun clubs provided the gun club has premises from which it operates and maintains possession and control of handguns used by its members, and has procedures and facilities for keeping such handguns in a safe place, under the control of the club's chief officer, at all times when they are not being used for target shooting or other sporting or recreational purposes at the premises of the gun club; and gun club members while such members are using their handguns at the gun club premises . . . ." § 6-2-

3

3(C)(7). "LICENSED GUN CLUB: A club or organization, organized for the purpose of practicing

shooting at targets, licensed by the village of Morton Grove as provided by this code." § 6-2-1.

15.     In addition to the above, an exemption exists for transportation of handguns "by

those persons authorized under subsections C1 through C8 of this section to possess handguns, if

the handguns are broken down in a nonfunctioning state or not immediately accessible. "§ 6-2-

3(C)(9). The following is also exempt:

> Transportation of handguns by persons from a licensed gun club to another
> licensed gun club or transportation from a licensed gun club to a gun club
> outside the limits of Morton Grove; provided however that the transportation
> is for the purpose of engaging in competitive target shooting or for the
> purpose of permanently keeping the said handgun at such new gun club; and
> provided further that at all times during such transportation said handgun shall
> have trigger locks securely fastened to the handgun.

§ 6-2-3(C)(10).

16.     Defendant Krier is responsible for enforcing the above provisions through law

enforcement agencies under his direction and control.

17.     Defendant Krier and the law enforcement agencies that operate under his

supervision have no legal duty to protect Morton Grove residents, including Plaintiffs, from

robbery, rape, murder, or any other crime.

## FACTS

18.     Plaintiffs, as well as other members of Plaintiff NRA, reside in Morton Grove.  But

for Morton Grove Municipal Code, § 6-2-3(C) and 6-2-3(D)(2), and the enforcement thereof by

Defendants, Plaintiffs and numerous other NRA members would forthwith (a) lawfully obtain

handguns to keep at home for lawful purposes including self-protection and the protection of their

families and loved ones and (b) transfer handguns which they lawfully store outside of Morton

Grove to their homes.  Should they do so in violation of such provisions, they would be subject to arrest, prosecution, imprisonment, and fines.

19.    Plaintiffs, and numerous members of Plaintiff NRA, either travel through or need to travel through Morton Grove.  Morton Grove Municipal Code, § 6-2-3(C) and 6-2-3(D)(2), and the enforcement thereof by Defendants subjects such persons who are otherwise lawfully transporting firearms to the threat of arrest, prosecution, imprisonment, and fines or requires them to travel on other routes to avoid arrest, prosecution, imprisonment, and fines.

20.    Plaintiff Patrick C. Kansoer lawfully owns and stores a handgun outside of the Village of Morton Grove.  But for Morton Grove Municipal Code, § 6-2-3(C) and 6-2-3(D)(2), he would forthwith keep his handgun at his residence in Morton Grove.

21.    Plaintiff Jessica L. Sonne and numerous members of Plaintiff NRA wish to obtain and possess handguns to keep in their homes for lawful defense from any unlawful, sudden, deadly attack by an intruder and to lawfully transport their handguns through the Village of Morton Grove. However, individuals face arrest, prosecution, and incarceration should they possess a handgun in violation of Village of Morton Grove Municipal Code, § 6-2-3(C) and 6-2-3(D)(2).  But for Morton Grove Municipal Code, § 6-2-3(C) and 6-2-3(D)(2), Plaintiff, Jessica L. Sonne and members of Plaintiff NRA would imminently obtain handguns pursuant to the laws of the United States and the State of Illinois.

22.    As a proximate cause of Morton Grove Municipal Code, § 6-2-3(C) and 6-2-3(D)(2), and the enforcement thereof by Defendants and their agents and employees, Plaintiffs are subjected to irreparable harm in that they are unable to obtain handguns to protect themselves in their homes, subjecting them to endangerment from criminal intruders and violating their Constitutional rights as set forth herein.

## COUNT I

### (Second and Fourteenth Amendments)

23.     Paragraphs 1 through 22 are realleged and incorporated herein by reference.

24.     The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Fourteenth Amendment to the United States Constitution provides in part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." The Second Amendment is applicable to the States and political subdivisions thereof through the Fourteenth Amendment.

25.     Because Morton Grove Municipal Code § 6-2-3(C) prohibits possession of a handgun, it infringes on the right of the people, including Plaintiffs and members of Plaintiff NRA, to keep and bear arms as guaranteed by the Second and Fourteenth Amendments to the United States Constitution and is thus null and void.

WHEREFORE, Plaintiffs pray that the Court:

A.     Enter a declaratory judgment that Village of Morton Grove Municipal Code, § 6-2-3(C) is null and void because it infringes on the right of the people to keep and bear arms in violation of the Second and Fourteenth Amendments to the United States Constitution.

B.     Issue preliminary and permanent injunctions enjoining Defendants and their officers, agents and employees, from enforcing Village of Morton Grove Municipal Code, § 6-2-3(C).

C.     Grant such other and further relief as may be proper.

D.     Award Plaintiffs attorneys' fees and costs.

6

## COUNT II

### (Equal Protection)

26.     Paragraphs 1 through 25 are realleged and incorporated herein by reference.

27.     The Fourteenth Amendment to the United States Constitution provides that no State shall deny to any person the equal protection of the laws.

28.     Possession of handguns is prohibited to persons generally, including Plaintiffs and to members of Plaintiff NRA.  Morton Grove Municipal Code, § 6-2-3(C).  However, the following categories of persons are exempted from the prohibition:

    (a)     "Licensed gun collectors." § 6-2-3(C)(6).

    (b)     "Licensed gun clubs," provided that the handguns therein are under the control of the club's chief officer when not being used for sporting or recreational purposes at the club; and "gun club members while such members are using their handguns at the gun club premises." § 6-2-3 (C)(7).

29.     The above exemptions irrationally discriminate against all non-exempted persons, including Plaintiffs and members of Plaintiff NRA, denying to them the equal protection of the laws, in violation of the Fourteenth Amendment.

WHEREFORE, Plaintiffs pray that the Court:

A.     Enter a declaratory judgment that Village of Morton Grove Municipal Code, § 6-2-3(C) is null and void because it, in conjunction with § 6-2-3(C)(6) & (7), violates the equal protection of the laws guaranteed by the Fourteenth Amendment.

B.     Issue preliminary and permanent injunctions enjoining Defendants and their officers, agents and employees, from enforcing Village of Morton Grove Municipal Code, § 6-2-3(C).

C.     Grant such other and further relief as may be proper.

D.    Award Plaintiffs attorneys' fees and costs.

## COUNT III

### (18 U.S.C. § 926A)

30.    Paragraphs 1 through 29 are realleged and incorporated herein by reference.

31.    Plaintiffs and members of Plaintiff NRA may lawfully transport firearms through the Village of Morton Grove pursuant to the Firearms Owners' Protection Act of 1986 ("FOPA"), 18 U.S.C. § 926A, which provides:

> Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle: Provided, That in the case of a vehicle without a compartment separate from the driver's compartment the firearm or ammunition shall be contained in a locked container other than the glove compartment or console.

32.    Village of Morton Grove Municipal Code § 6-2-3(C) prohibits possession of a handgun, but the limited exemptions for transportation are inconsistent with 18 U.S.C. § 926A. Transportation of a nonfunctioning or inaccessible handgun by an otherwise exempted person is exempt.  § 6-2-3(C)(9).  Also exempt is the transportation of a handgun with a trigger lock by a person from a licensed gun club to another licensed gun club or to a gun club outside the limits of Morton Grove, but only to engage in competitive target shooting or to keep the handgun at the new gun club permanently, for the purpose of permanently keeping the said handgun at such new gun club.  § 6-2-3 (C)(1 0).

33.    Village of Morton Grove Municipal Code § 6-2-3(C), which prohibits possession of a handgun, and the enforcement thereof by Defendants, violates the entitlement of persons,

including Plaintiffs and members of Plaintiff NRA, to transport firearms pursuant to 18 U.S.C. §

926A, and is thus preempted and void.

WHEREFORE, Plaintiffs pray that the Court:

A.      Enter a declaratory judgment that Village of Morton Grove Municipal Code, § 6-2-
3(C) is null and void because it is preempted by 18 U.S.C. § 926A.

B.      Issue preliminary and permanent injunctions enjoining Defendants and their officers,

agents and employees, from enforcing Village of Morton Grove Municipal Code, § 6-2-3(C).

C.      Grant such other and further relief as may be proper.

D.      Award Plaintiffs attorneys' fees and costs.

Respectfully submitted,

**NATIONAL RIFLE ASSOCIATION
OF AMERICA, INC., PATRICK C. KANSOER,
SR., DONALD W. SONNE and JESSICA L.
SONNE,**
Plaintiffs

BY:_____s/ William N. Howard_____
One of Their Attorneys

Local Counsel
William N. Howard, Esq.
**FREEBORN & PETERS LLP**
311 S. Wacker Dr., Suite 3000
Chicago, Illinois  60606
(312) 360-6415

Stephen P. Halbrook, Esq.
10560 Main St., Suite 404
Fairfax, VA  22030
(703) 352-7276
(*Pro Hac Vice pending*)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NATIONAL RIFLE ASSOCIATION OF       )
AMERICA, INC., PATRICK C. KANSOER, SR.,  )
DONALD W. SONNE and JESSICA L. SONNE,  )
                                    )
        Plaintiffs,                 )
                                    )
v.                                  )  Civil Action No.
                                    )
VILLAGE OF MORTON GROVE and         )
RICHARD KRIER, President,           )
                                    )
        Defendants.                 )

## LR 3.2 Notification Of Affiliates

Pursuant to Local Rule 3.2 of the Rules of the United States District Court for the Northern

District of Illinois, Plaintiff National Rifle Association of America, Inc., a non-profit corporation,

hereby states that it has no publicly held affiliates.

s/ William N. Howard

William N. Howard
One of the Attorney for Plaintiffs.

# EXHIBIT "2"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NATIONAL RIFLE ASSOCIATION OF )     FILED: JUNE 27, 2008
AMERICA, INC., ALAN L. MILLER )     08CV 3693
JONATHAN BLAIR GARBER, )     JUDGE ASPEN
and KEVIN P. STANTON, )     MAGISTRATE JUDGE COLE
          )     EDA
    Plaintiffs, )
          )
v. ) Civil Action No.
          )
CITY OF EVANSTON, and )
LORRAINE H. MORTON, Mayor, )
          )
    Defendants. )

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Plaintiffs, NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., JONATHAN BLAIR GARBER, ALAN L. MILLER and KEVIN P. STANTON, by and through their attorneys, Stephen P. Halbrook, Esq. and William N. Howard (the latter of Freeborn & Peters LLP), as and for their complaint against Defendants, CITY OF EVANSTON and LORRAINE H. MORTON, its Mayor, state as follows:

1.     This is an action to vindicate the rights of residents of Evanston, Illinois, to keep and bear arms as guaranteed by the Second and Fourteenth Amendments to the United States Constitution, which guarantees the right of law-abiding citizens to keep handguns in the home for lawful defense of their families and other lawful purposes.

## PARTIES

2.     Plaintiff National Rifle Association of America, Inc. (hereafter "NRA") is a non-profit association incorporated under the laws of New York, with its principal place of business in Fairfax, Virginia.  NRA has a membership of 4 million persons, some of which reside in or travel

through Evanston, Illinois.  The purposes of NRA include the protection of the right of citizens to have firearms for the lawful defense of their families, persons, and property, and to promote public safety and law and order.  NRA brings this action on behalf of itself and its members.

3.     Plaintiff, Alan L. Miller ("Miller") is a resident of Evanston, Illinois, a citizen of the United States, and a member of the NRA.

4.     Plaintiff, Kevin P. Stanton ("Stanton"), is a resident of Evanston, Illinois and a citizen of the United States, and a member of the NRA.

5.     Plaintiff, Jonathan Blair Garber ("Garber"), is a resident of Evanston, Illinois and a citizen of the United States, and a member of the NRA.

6.     Defendant,  Lorraine H. Morton ("Morton"), is the Mayor of the City of Evanston, which is her principal place of business.  She is being sued in her official capacity.

7.     Defendant, the City of Evanston, is a political subdivision of the State of Illinois. Morton and the City of Evanston and their officers, agents and employees are sometimes hereinafter referred to as "Defendants."

## JURISDICTION

8.     Jurisdiction is founded on 28 US.C. § 1331 in that this action arises under the Constitution and laws of the United States, and under 28 US.C. § 1343(3) in that this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of Illinois and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

9.     This action seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983. Venue lies in this district pursuant to 28 US.C. § 1391(b).

2

## BACKGROUND

10.    The City of Evanston prohibits possession of a handgun.  "No person shall possess, in the City of Evanston any handgun, unless the same has been rendered permanently inoperative." Evanston City Code, § 9-8-2.  "HANDGUN: Any firearm which: a) is designed or redesigned or made or remade, and intended to be fired while held in one hand or b) having a barrel of less than ten inches (10") in length or c) a firearm of a size which may be concealed upon the person."  § 9-8-1.  Violation is a misdemeanor punishable by fine of not less than $1,500 and/or incarceration for up to six months.  § 9-8-6(A).  Any handgun is to be confiscated and destroyed.  § 9-8-6(B).

11.    Evanston exempts from the handgun prohibition persons "within the confines of their permanent residence" who are "Gun collectors" licensed by the Bureau of Alcohol, Tobacco and Firearms.  § 9-8-5(A)(9).  "LICENSED FIREARM COLLECTOR: "Any person licensed as a collector by the Secretary of the Treasury of the United States under and by virtue of Title 18, United States Code, section 923."  § 9-8-1.

12.    Evanston also exempts from the handgun prohibition: "An established theater, provided it maintains possession and control of handguns in a safe place, under control of the designated armorer," when not in use, § 9-8-5(A)(12); and "An established film production organization" approved by the city manager, provided that possession be "in a safe place under control of the designated armorer at all times when not in use for rehearsals or filming."  § 9-8-5(A)(13).

13.    To qualify for any of these four exemptions, a person "shall be registered with, and approved by, the Evanston police department."  § 9-8-5(B).  Transportation of handguns by such persons is authorized "if the handguns are unloaded and broken down in a nonfunctioning state or unloaded and not immediately accessible."  § 9-8-5(A)(11).

14.     Defendant Morton is responsible for enforcing the above provisions through law enforcement agencies under her direction and control.

15.     Defendant Morton and the law enforcement agencies that operate under her supervision have no legal duty to protect Evanston residents, including Plaintiffs, from robbery, rape, murder, or any other crime.

## FACTS

16.     Plaintiffs Miller, Garber and Stanton, as well as numerous other members of Plaintiff NRA reside in Evanston.  But for Evanston City Code §§ 9-8-2 and 9-8-6(A), and the enforcement thereof by Defendants, Plaintiffs Miller, Garber and Stanton, and numerous other NRA members, would forthwith lawfully obtain handguns to keep at home for lawful self-protection.  Should they do so in violation of such provisions, they would be subject to arrest, prosecution, imprisonment, and fines.

17.     Plaintiffs, and numerous members of Plaintiff NRA, either travel through or need to travel through Evanston.  Evanston City Code §§ 9-8-2 and 9-8-6(A), and the enforcement thereof by Defendants, subjects such persons who are otherwise lawfully transporting firearms to the threat of arrest, prosecution, imprisonment, and fines or requires them to travel on other routes to avoid arrest, prosecution, imprisonment, and fines.

18.     Plaintiffs Garber and Stanton lawfully own and store handguns outside of the City of Evanston.  But for Evanston City Code, §§ 9-8-2 and 9-8-6(A), they would forthwith retrieve such handguns to keep them at their residences in the City of Evanston which could then be used for self-protection and the protection of loved ones.

19.     Plaintiff Miller, and other Plaintiff NRA members, wish to obtain and possess handguns to keep in their homes for lawful defense from any unlawful, sudden, deadly attack by an

intruder.  However, Plaintiff Miller, and other Plaintiff NRA members, face arrest, prosecution, and incarceration should they possess a handgun in violation of Evanston City Code, §§ 9-8-2 and 9-8-6(A).  But for Evanston City Code, §§ 9-8-2 and 9-8-6(A), members of NRA and Plaintiff Miller would imminently obtain handguns pursuant to the laws of the United States and the State of Illinois.

20.     As a proximate cause of Evanston City Code §§ 9-8-2 and 9-8-6(A) and the enforcement thereof by Defendants and their agents and employees, Plaintiffs are subjected to irreparable harm in that they are unable to obtain handguns to protect themselves in their homes, subjecting them to endangerment from criminal intruders and violating their Constitutional rights as set forth herein.

### COUNT I

### (Second and Fourteenth Amendments)

21.     Paragraphs 1 through 20 are realleged and incorporated herein by reference.

22.     The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  The Fourteenth Amendment to the United States Constitution provides in part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  The Second Amendment is applicable to the States and political subdivisions thereof through the Fourteenth Amendment.

23.     Because Evanston City Code § 9-8-2 prohibits the possession of a handgun, it infringes on the right of the people, including Plaintiffs and members of Plaintiff NRA, to keep and

bear arms as guaranteed by the Second and Fourteenth Amendments to the United States Constitution and is thus null and void.

WHEREFORE, Plaintiffs pray that the Court:

A.    Enter a declaratory judgment that Evanston City Code, § 9-8-2 is null and void because it infringes on the right of the people to keep and bear arms in violation of the Second and Fourteenth Amendments to the United States Constitution.

B.    Issue preliminary and permanent injunctions enjoining Defendants and their officers, agents and employees, from enforcing Evanston City Code, § 9-8-2.

C.    Grant such other and further relief as may be proper.

D.    Award Plaintiffs attorneys' fees and costs.

## COUNT II

### (Equal Protection)

24.    Paragraphs 1 through 23 are realleged and incorporated herein by reference.

25.    The Fourteenth Amendment to the United States Constitution provides that no State shall deny to any person the equal protection of the laws.

26.    Possession of handguns is prohibited to persons generally, including Plaintiffs, and to members of Plaintiff, NRA. Evanston City Code, § 9-8-2. However, the following categories of persons are exempted from the prohibition:

(a)    "Gun collectors" licensed by the Bureau of Alcohol, Tobacco and Firearms. § 9-8-5(A)(9).

(b)    "An established theater" provided that handguns are under the control of the designated armorer when not in use. § 9-8-5(A)(12).

  (c)  "An established film production organization" approved by the city manager, provided that possession be under control of the designated armorer when not in use. § 9-8-5(A)(13).

27.  The above exemptions irrationally discriminate against all non-exempted persons, including Plaintiffs and members of Plaintiff NRA, denying to them the equal protection of the laws, in violation of the Fourteenth Amendment.

WHEREFORE, Plaintiffs pray that the Court:

A.  Enter a declaratory judgment that Evanston City Code, § 9-8-2 is null and void because it , in conjunction with §§ 9-8-5(A)(9), (12), and (13), violates the equal protection of the laws guaranteed by the Fourteenth Amendment.

B.  Issue preliminary and permanent injunctions enjoining Defendants and their officers, agents and employees, from enforcing Evanston City Code, § 9-8-2.

C.  Grant such other and further relief as may be proper.

D.  Award Plaintiffs attorneys' fees and costs.

**COUNT III**

**(18 U.S.C. § 926A)**

28.  Paragraphs 1 through 27 are realleged and incorporated herein by reference.

29.  Plaintiffs and members of Plaintiff NRA may lawfully transport firearms through the City of Evanston pursuant to the Firearms Owners' Protection Act of 1986 ("FOP A"), 18 U.S.C. § 926A, which provides:

> Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm if, during such

transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle: Provided, That in the case of a vehicle without a compartment separate from the driver's compartment the firearm or ammunition shall be contained in a locked container other than the glove compartment or console.

30. Evanston City Code, § 9-8-2, which prohibits possession of any handgun, and the enforcement thereof by Defendant, Morton, violates the entitlement of persons, including Plaintiffs and members of Plaintiff NRA, to transport firearms pursuant to 18 U.S.C. § 926A, and is thus preempted and void.

WHEREFORE, Plaintiffs pray that the Court:

A. Enter a declaratory judgment that Evanston City Code, § 9-8-2 is null and void because it is preempted by 18 U.S.C. § 926A.

B. Issue preliminary and permanent injunctions enjoining Defendants and their officers, agents and employees, from enforcing Evanston City Code, § 9-8-2.

C. Grant such other and further relief as may be proper.

D. Award Plaintiffs attorneys' fees and costs.

Respectfully Submitted,

**NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., JONATHAN BLAIR GARBER, ALAN L. MILLER and KEVIN P. STANTON,**
Plaintiffs

BY:＿＿s/ William N. Howard＿＿＿＿＿＿
One of Their Attorneys

Local Counsel:
William N. Howard, Esq.
**FREEBORN & PETERS LLP**
311 S. Wacker Dr., Suite 3000
Chicago, Illinois   60606
(312) 360-6415


Stephen P. Halbrook, Esq.
10560 Main St., Suite 404
Fairfax, VA  22030
(703) 352-7276
(*Pro Hac Vice pending*)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., ALAN L. MILLER JONATHAN BLAIR GARBER, and KEVIN P. STANTON,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF EVANSTON, and LORRAINE H. MORTON, Mayor,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No.<br>)<br>)<br>)<br>)<br>) |

**LR 3.2 Notification Of Affiliates**

Pursuant to Local Rule 3.2 of the Rules of the United States District Court for the Northern District of Illinois, Plaintiff National Rifle Association of America, Inc., a non-profit corporation, hereby states that it has no publicly held affiliates.

s/ William N. Howard

William N. Howard
One of the Attorney for Plaintiffs.

# EXHIBIT "3"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NATIONAL RIFLE ASSOCIATION OF )
AMERICA, INC., ROBERT KLEIN ENGLER, )
and DR. GENE A. REISINGER, )
               )
       Plaintiffs, )
               )
v. )  Civil Action No.
               )
               )
VILLAGE OF OAK PARK and )
DAVID POPE, President, )
               )
       Defendants. )

```
FILED: JUNE 27, 2008
08CV3696
JUDGE LEFKOW
MAGISTRATE JUDGE ASHMAN
EDA
```

**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

    Plaintiffs, NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., ROBERT KLEIN

ENGLER and DR. GENE A. REISINGER, by and through their attorneys, Stephen P. Halbrook,

Esq. and William N. Howard, Esq. (the latter of Freeborn & Peters LLP), as and for their complaint

against Defendants, VILLAGE OF OAK PARK and DAVID POPE, its President, state as follows:

    1.    This is an action to vindicate the rights of residents of Oak Park, Illinois, to keep and

bear arms as guaranteed by the Second and Fourteenth Amendments to the United States

Constitution, which guarantees the right of law-abiding citizens to keep handguns in the home for

the lawful defense of their families and for other lawful purposes.

**PARTIES**

    2.    Plaintiff, National Rifle Association of America, Inc. (hereafter "NRA"), is a non-

profit association incorporated under the laws of New York, with its principal place of business in

Fairfax, Virginia. NRA has a membership of 4 million persons, some of which reside in or travel

through Oak Park, Illinois. The purposes of the NRA include the protection of the right of citizens

to have firearms for the lawful defense of their families, persons, and property, and to promote public safety and law and order. NRA brings this action on behalf of itself and its members.

3.    Plaintiff, Robert Klein Engler ("Engler"), is a resident of Oak Park, Illinois, a citizen of the United States, and a member of the NRA.

4.    Plaintiff, Dr. Gene A. Reisinger ("Reisinger"), is a resident of Oak Park, Illinois, a citizen of the United States, and a member of the NRA.

5.    Numerous members of Plaintiff NRA who are citizens of the United States but not residents of Oak Park frequently travel through Oak Park, Illinois.

6.    Defendant, David Pope ("Pope"), is the President of the Village of Oak Park, which is his principal place of business. He is being sued in his official capacity.

7.    Defendant, the Village of Oak Park, is a political subdivision of the State of Illinois. Pope and the Village of Oak Park and their officers, agents and employees are sometimes hereinafter referred to as "Defendants."

## JURISDICTION

8.    Jurisdiction is founded on 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(3) in that this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of Illinois and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

9.    This action seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983. Venue lies in this district pursuant to 28 U.S.C. § 1391(b).

2

## BACKGROUND

10.    The Village of Oak Park prohibits possession of a handgun.    The Oak Park Municipal Code provides: "It shall be unlawful for any person to possess or carry, or for any person to permit another to possess or carry on his/her land or in his/her place of business any firearm . . . ." Oak Park Municipal Code, § 27-2-1.  "FIREARMS: For the purpose of this Article firearms are: pistols, revolvers, guns and small arms of a size and character that may be concealed on or about the person, commonly known as handguns." § 27-1-1.

11.    It is further unlawful "to carry" a rifle, shotgun, or firearm in a vehicle, or to permit another to do so in a vehicle one owns, "or about his/her person, except that a person may carry any rifle or shotgun when on his/her land or in his/her abode or fixed place of business . . . ." § 27-2-1. There is an exemption for licensed hunters or fishermen commuting with a rifle or shotgun to or from established game areas.  § 27-2-1(H).  Also exempt is the transportation of weapons "broken down in a nonfunctioning state and not immediately accessible," but if it is a firearm (handgun), the transportation must not originate or terminate in Oak Park.  § 27-2-1(1).

12.    None of the above provisions apply to "Licensed firearm collectors."  § 27-2-1 (K). "LICENSED FIREARM COLLECTOR: Any person licensed as a collector by the Secretary of the Treasury of the United States under and by virtue of Title 18, United States Code, Section 923; provided however, that a copy of said license is filed with the Chief of Police." § 27-1-1.

13.    Exempt from the handgun prohibition are: "Members of established theater organizations located in Oak Park and performing a regular performance schedule to the public, utilizing only blank ammunition in the discharge of weapons only during rehearsals, classes or performances; provided further that said organization maintains possession and control over these

3

weapons in a safe place with a designated member of the organization when the weapons are not in use. . . ." § 27-2-1 (L).

14.    Violation is punishable with a fine of not more than $1,000 for the first offense and $2,000 for a subsequent offense. § 27-4-1 (A). Weapons involved in offenses are to be confiscated and destroyed. § 27-4-1 (C). A motor vehicle which a police officer has probable cause to believe contains a weapon in violation of the above is subject to seizure and impoundment, and may be released on payment of a $500 fine. § 27-4-4.

15.    It is unlawful to sell or give away a "firearm" as defined, whether by a dealer or a single individual, without a license approved by the Chief of Police and the Village Manager. §§ 27-1-3, -4, -5. A firearm may only be transferred to law enforcement entities. § 27-1-2.

16.    Defendant-Pope is responsible for enforcing the above provisions through law enforcement agencies under his direction and control.

17.    Defendant-Pope and the law enforcement agencies that operate under his supervision have no legal duty to protect Oak Park residents, including Plaintiffs, from robbery, rape, murder, or any other crime.

## FACTS

18.    Plaintiffs, Engler and Dr. Reisinger, as well as other members of Plaintiff NRA, reside in Oak Park. But for Oak Park Municipal Code, § 27-2-1, and the enforcement thereof by Defendant-Pope, Plaintiffs and numerous other NRA members who reside in Oak Park would forthwith (a) lawfully obtain handguns to keep at home for lawful purposes including self-protection and the protection of their families and loved ones and (b) transfer handguns which they lawfully store outside the jurisdiction to their homes. Should they do so in violation of such provisions, they would be subject to arrest, prosecution, imprisonment, and fines.

4

19.    Plaintiffs, and numerous members of Plaintiff NRA either travel through or need to travel through Oak Park. Oak Park Municipal Code § 27-2-1, and the enforcement thereof by Defendant Pope, subjects such persons who are otherwise lawfully transporting firearms to the threat of arrest, prosecution, imprisonment, and fines or requires them to travel on other routes to avoid arrest, prosecution, imprisonment, and fines.

20.    Plaintiffs, Engler and Dr. Reisinger, lawfully own and store handguns outside the Village of Oak Park. But for Oak Park Municipal Code § 27-2-1, they would forthwith keep their handguns at their residences in the Village of Oak Park. But for Oak Park Municipal Code § 27-2-1, they have not brought their handguns into the Village of Oak Park so that they could be used for self-protection.

21.    Plaintiffs, Engler and Dr. Reisinger, and numerous members of Plaintiff NRA, wish to obtain and possess handguns to keep in their homes for lawful defense from any unlawful, sudden, deadly attack by an intruder and to lawfully transport their handguns through the Village of Oak Park. However, individuals face arrest, prosecution, and incarceration should they possess a handgun in violation of Oak Park Municipal Code, § 27-2-1. But for § 27-2-1, members of Plaintiff NRA would imminently obtain handguns pursuant to the laws of the United States and the State of Illinois.

22.    As a proximate cause of Oak Park Municipal Code § 27-2-1, and the enforcement thereof by Defendants and their agents and employees, Plaintiffs and members of Plaintiff NRA are subjected to irreparable harm in that they are unable to obtain handguns to protect themselves in their homes, subjecting them to endangerment from criminal intruders and violating their Constitutional rights as set forth herein.

## COUNT I

### (Second and Fourteenth Amendments)

23.     Paragraphs 1 through 22 are realleged and incorporated herein by reference.

24.     The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Fourteenth Amendment to the United States Constitution provides in part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." The Second Amendment is applicable to the States and political subdivisions thereof through the Fourteenth Amendment.

25.     Because Oak Park Municipal Code, § 27-2-1 prohibits the possession of a handgun, it infringes on the right of the people, including Plaintiffs and members of Plaintiff NRA, to keep and bear arms as guaranteed by the Second and Fourteenth Amendments to the United States Constitution and is thus null and void.

WHEREFORE, Plaintiffs pray that the Court:

A.      Enter a declaratory judgment that Oak Park Municipal Code, § 27-2-1 is null and void because it infringes on the right of the people to keep and bear arms in violation of the Second and Fourteenth Amendments to the United States Constitution.

B.      Issue preliminary and permanent injunctions enjoining Defendants and their officers, agents and employees, from enforcing Oak Park Municipal Code, § 27-2-1.

C.      Grant such other and further relief as may be proper.

D.      Award Plaintiffs attorneys' fees and costs.

6

## COUNT II

### (Equal Protection)

26.    Paragraphs 1 through 25 are realleged and incorporated herein by reference.

27.    The Fourteenth Amendment to the United States Constitution provides that no State shall deny to any person the equal protection of the laws.

28.    Possession of handguns is prohibited to persons generally, including Plaintiffs and members of Plaintiff NRA.    Oak Park Municipal Code, § 27-2-1.    However, the following categories of persons are exempted from the prohibition:

      (a)    "Licensed firearm collectors," § 27-2-1 (K); and,

      (b)    "Members of established theater organizations located in Oak Park and performing a regular performance schedule to the public," § 27-2-1 (L).

29.    The above exemptions irrationally discriminate against all non-exempted persons, including Plaintiffs and members of Plaintiff NRA, denying to them the equal protection of the laws, in violation of the Fourteenth Amendment.

WHEREFORE, Plaintiffs pray that the Court:

A.    Enter a declaratory judgment that Oak Park Municipal Code, § 27-2-1 is null and void because it, in conjunction with § 27-2-1(K) & (L), violates the equal protection of the laws guaranteed by the Fourteenth Amendment.

B.    Issue preliminary and permanent injunctions enjoining Defendants and their officers, agents and employees, from enforcing Oak Park Municipal Code, § 27-2-1.

C.    Grant such other and further relief as may be proper.

D.    Award Plaintiffs attorneys' fees and costs.

## COUNT III

### (18 U.S.C. § 926A)

30.    Paragraphs 1 through 29 are realleged and incorporated herein by reference.

31.    Plaintiffs and members of Plaintiff NRA may lawfully transport firearms through the Village of Oak Park pursuant to the Firearms Owners' Protection Act of 1986 ("FOPA"), 18 U.S.C. § 926A, which provides:

> Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle: Provided, That in the case of a vehicle without a compartment separate from the driver's compartment the firearm or ammunition shall be contained in a locked container other than the glove compartment or console.

32.    However, Oak Park makes it unlawful to possess a handgun, or to carry a rifle, shotgun, or firearm in a vehicle, or to permit another to do so in a vehicle one owns. Oak Park Municipal Code, § 27-2-1. Exempted are: "Licensed hunters or fishermen while commuting to or from established game areas; provided, however, that this exemption shall not apply to the possession or carrying of 'firearms'" (handguns). § 27-2-1(H). Also exempt are: "Transportation of weapons broken down in a nonfunctioning state and not immediately accessible." § 27-2-1(1).

33.    The Village of Oak Park thus limits transportation of rifles and shotguns to licensed hunters and fishermen and otherwise requires weapons to be broken down in a nonfunctioning state, contrary to 18 U.S.C. § 926A. Persons transporting rifles, shotguns, and handguns in compliance with § 926A through Oak Park are thereby subject to arrest and prosecution.

34.     The above provisions and the enforcement thereof by Defendants violate the entitlement of persons, including Plaintiffs and members of Plaintiff NRA, to transport firearms, including rifles, shotguns, and handguns, pursuant to 18 U.S.C. § 926A, and are thus preempted and void.

WHEREFORE, Plaintiffs pray that the Court:

A.     Enter a declaratory judgment that Oak Park Municipal Code, § 27-2-1 is null and void because it is preempted by 18 U.S.C. § 926A.

B.     Issue preliminary and permanent injunctions enjoining Defendants and their officers, agents and employees, from enforcing Oak Park Municipal Code, § 27-2-1.

C.     Grant such other and further relief as may be proper.

D.     Award Plaintiffs attorneys' fees and costs.

Respectfully Submitted,

**NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., ROBERT KLEIN ENGLER, and DR. GENE A. REISINGER,** Plaintiff

BY:     s/ William N. Howard
           One of Their Attorneys

Local Counsel:
William N. Howard, Esq.
**FREEBORN & PETERS LLP**
311 S. Wacker Dr., Suite 3000
Chicago, Illinois   60606
(312) 360-6415

Stephen P. Halbrook, Esq.
10560 Main St., Suite 404
Fairfax, VA  22030
(703) 352-7276
(*Pro Hac Vice pending*)

9

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NATIONAL RIFLE ASSOCIATION OF )
AMERICA, INC., ROBERT KLEIN ENGLER, )
and DR. GENE A. REISINGER, )
                                )
       Plaintiffs, )
                                )
v. ) Civil Action No.
                                )
                                )
VILLAGE OF OAK PARK and )
DAVID POPE, President, )
                                )
       Defendants. )

### LR 3.2 Notification Of Affiliates

Pursuant to Local Rule 3.2 of the Rules of the United States District Court for the Northern

District of Illinois, Plaintiff National Rifle Association of America, Inc., a non-profit corporation,

hereby states that it has no publicly held affiliates.

                         s/ William N. Howard

                         William N. Howard
                         One of the Attorney for Plaintiffs.

# EXHIBIT "4"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NATIONAL RIFLE ASSOCIATION OF      )
AMERICA, INC., ALAN L. MILLER        )
JONATHAN BLAIR GARBER,            )
and KEVIN P. STANTON,               )
                                    )
     Plaintiffs,                 )
                                    )
v.                                )    No.  08 CV 3693
                                    )
CITY OF EVANSTON, and           )    Judge Aspen
LORRAINE H. MORTON, Mayor,     )
                                    )
     Defendants.               )

### MOTION FOR RECUSAL

Plaintiffs, NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., ("NRA") JONATHAN BLAIR GARBER ("Garber"), ALAN L. MILLER ("Miller") and KEVIN P. STANTON ("Stanton") (collectively "Plaintiffs"), request that Judge Marvin E. Aspen recuse himself from the above captioned matter.[1] Recusal is appropriate pursuant to 28 U.S.C. §455(a) as well as §455(b)(1).

1.     The present action concerns Evanston's handgun prohibitions and Plaintiffs' constitutional and statutory challenges to those regulations. Evanston prohibits possession of a handgun: "[n]o person shall possess, in the City of Evanston any handgun, unless the same has been rendered permanently inoperative."

2.     Judge Aspen has stated the he *"freely confess[es] to a bias* in favor of the enactment of new federal gun control legislation." In an article published in the *Chicago Bar*

---

[1]  The Plaintiffs in *NRA v. Morton Grove, et al.,* Case No. 08 C 3694 have simultaneously filed a Motion for Finding of Relatedness and for Reassignment and Consolidation pursuant to L.R. 40.4 with respect to this case and *National Rifle Assoc. of America, Inc., Robert Klein Engler, and Dr. Gene A. Reisinger v. Village of Oak Park and David Pope, President,* No. 08 CV 3696.

*Record*, Judge Aspen voiced his opinion on the need for strong legislation banning handguns. (*Id.*) Especially significant to the present case, Judge Aspen also spoke out against those who desire to obtain handguns for the defense of self and property.

   3.    Pursuant to §455(a), a judge should disqualify himself in any proceeding in which his impartiality might reasonably be questioned.  In this case, a reasonable person would likely question Judge Aspen's impartiality.   Considering Judge Aspen's published article and his admitted bias, a reasonable person could conclude that Judge Aspen favors handgun restrictions such as the one the Plaintiffs challenge here.  And while Plaintiffs do not doubt that Judge Aspen is of the highest integrity, under §455(a) it is not the reality of bias or prejudice, but its appearance" that is dispositive.   Here, Judge Aspen has done more than merely create an appearance of bias, he has expressly stated he has a bias in favor of federal gun control legislation.

   4.    For this reason, and as set forth more fully in the Memorandum of Law accompanying this motion, Judge Aspen should recuse himself from this matter.

   WHEREFORE, Plaintiffs respectfully request that Judge Aspen recuse himself from this matter.

Dated:  July 25, 2008                        Respectfully Submitted,

                                             **NATIONAL RIFLE ASSOCIATION**
                                             **OF AMERICA, INC., JONATHAN BLAIR**
                                             **GARBER, ALAN L. MILLER and**
                                             **KEVIN P. STANTON,**
                                             Plaintiffs


                                             BY:    s/ William N. Howard
                                                    One of Their Attorneys

Local Counsel:
William N. Howard, Esq.
**FREEBORN & PETERS LLP**
311 S. Wacker Dr., Suite 3000
Chicago, Illinois   60606
(312) 360-6415

Stephen P. Halbrook, Esq.
10560 Main St., Suite 404
Fairfax, VA  22030
(703) 352-7276
(*Pro Hac Vice pending*)

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys of record for Plaintiffs, certifies that he caused a copy of this instrument referenced herein to be delivered to LaSalle process Servers to obtain service upon the parties of record, as shown below, the 25rd day of **July, 2008:**

City of Evanston
c/o  Lorraine H. Morton, Mayor or City Clerk
2100 Ridge Ave., Rm. 2500
Evanston, IL  60201

Lorraine H. Morton, Mayor
City of Evanston
2100 Ridge Ave., Rm. 2500
Evanston, IL  60201

s/ William N. Howard

Local Counsel:
William N. Howard, Esq.
**FREEBORN & PETERS LLP**
311 S. Wacker Dr., Suite 3000
Chicago, Illinois  60606
(312) 360-6415


Stephen P. Halbrook, Esq.
10560 Main St., Suite 404
Fairfax, VA  22030
(703) 352-7276
(Pro Hac Vice pending)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., PATRICK C. KANSOER, SR., DONALD W. SONNE and JESSICA L. SONNE, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No.  8 C 3694 |
| VILLAGE OF MORTON GROVE and RICHARD KRIER, President, | ) ) ) | Hon. Harry D. Leinenweber |
| Defendants. | ) ) | |

**MEMORANDUM IN SUPPORT OF MOTION
FOR FINDING OF RELATEDNESS AND TO REASSIGN
AND CONSOLIDATE PURSUANT TO LOCAL RULE 40.4**

Plaintiffs, NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., PATRICK C.

KANSOER, SR., DONALD W. SONNE and JESSICA L. SONNE, (collectively "Plaintiffs")

request that the following three cases before the United States District Court for the Northern

District of Illinois, Eastern Division be considered related and also reassigned and consolidated:

(1) the present action against the Village of Morton Grove and Richard Krier, President (the

"Morton Grove Complaint"); (2) *National Rifle Assoc. of America, Inc., Alan L. Miller, Jonathan*

*Blair Garber and Kevin P. Stanton v. City of Evansoton and Lorraine H. Morton, Mayor* Case

No. 08-CV-3693 ("the Evanston Complaint")[1]; and (3) *National Rifle Assoc. of America, Inc.,*

*Robert Klein Engler and Dr. Gene A. Reisinger v. Village of Oak Park and David Pope,*

---

[1] Although case No. 08-CV-6393 is the earliest-filed of the cases for which Plaintiffs seek consolidation, and would therefore normally be the proper forum for a motion for consolidation, the plaintiffs in that case have filed a motion seeking Judge Aspen's recusal. This case thus is the earliest-filed case in which the parties have not sought recusal.

*President,* Case No. 08-CV-3696 (the "Oak Park Complaint").[2]  The Plaintiffs in each of the cases supports and requests reassignment and consolidation.

These three associated cases are related because they involve common questions of law and fact and consolidation and reassignment of these cases is appropriate because they are all pending in this district, their consolidation will save judicial time and effort, reassignment and consolidation will not substantially delay the proceedings and the cases are susceptible to disposition in a single proceeding.

## Factual Background

The Morton Grove Complaint, Evanston Complaint and the Oak Park Complaint all center on a common issue of law and arise out of the same set of operative facts.   In each case, the respective Plaintiffs challenge a handgun prohibition and bring suit against the respective municipalities and officers.  The three handgun prohibitions are strikingly similar:

- The Village of Morton Grove prohibits possession of a handgun.  "No person shall possess, in the village of Morton Grove the following ... C. Handguns: Any handgun, unless the same has been rendered permanently inoperative." Village of Morton Grove Municipal Code, § 6-2-3(c).  "HANDGUN: Any firearm which is designed or redesigned, made or remade, and intended to be fired while held in one hand or having a barrel of less than ten inches (10") in length or a firearm of a size which may be concealed upon the person." §6-2-1.  The restriction has certain exceptions. (Morton Grove Complaint, ¶¶11-15.)

- The City of Evanston prohibits possession of a handgun.  "No person shall possess, in the City of Evanston any handgun, unless the same has been rendered permanently inoperative."  Evanston City Code, § 9-8-2.  "HANDGUN: Any firearm which: a) is designed or redesigned or made or remade, and intended to be fired while held in one hand or b) having a barrel of less than ten inches (10") in length or c) a firearm of a size which may be concealed upon the person."  § 9-8-1.  Violation is a misdemeanor punishable by fine of not less than $1,500 and/or incarceration for up to six months.  § 9-8-6(A).  Any handgun is to be confiscated and destroyed.  § 9-8-6(B).  The restriction has certain exceptions. (Evanston Complaint, ¶¶ 10-13.)

---

[2]     A copy of the Morton Grove Complaint is attached hereto as Exhibit 1.  A copy of the Evanston Complaint is attached hereto as Exhibit 2.  A copy of the Oak Park Complaint is attached hereto as Exhibit 3.

- The Village of Oak Park prohibits possession of a handgun. "It shall be unlawful for any person to possess or carry, or for any person to permit another to possess or carry on his/her land or in his/her place of business any firearm . . . ." Oak Park Municipal Code, § 27-2-1. "FIREARMS: For the purpose of this Article firearms are: pistols, revolvers, guns and small arms of a size and character that may be concealed on or about the person, commonly known as handguns." § 27-1-1. The restriction has certain exceptions. (Oak Park Complaint, ¶¶ 10-15.)

Additionally, the facts concerning Plaintiffs' challenges are virtually identical. In each case, but for the regulations, Plaintiffs would lawfully obtain handguns to keep at home for lawful self-protection. (Evanston Complaint, ¶ 16; Morton Grove Complaint, ¶ 18; Oak Park Complaint, ¶ 18.) If Plaintiffs were to do so in spite of the regulations they would face arrest, prosecution, imprisonment and fines. (*Id.*) In each case, the Plaintiffs either travel through or need to travel through the respective municipalities. (Evanston Complaint, ¶ 17; Morton Grove Complaint, ¶ 19; Oak Park Complaint, ¶ 19.) Additionally, the Plaintiffs are subject to irreparable harm in that they are unable to obtain handguns to protect themselves in their homes, subjecting them to endangerment and violating their constitutional rights. (Evanston Complaint, ¶ 20; Morton Grove Complaint, ¶ 22; Oak Park Complaint, ¶ 22.)

As this Court is undoubtedly well aware, the United States Supreme Court recently decided the case of *District of Columbia v. Heller*, No, 07-290 (S. Ct. June 26, 2008) which struck down the District of Columbia's ban on handgun possession and held that the Second Amendment guarantees an individual's right to own a gun for, among other things, self defense. In light of this recent ruling, Plaintiffs all challenge the constitutionality of the handgun prohibitions as well as the legality of such prohibitions in light of 18 U.S.C. §926A, the Firearms Owners' Protection Act ("FOPA").

**Argument**

Pursuant to Rule 42 of the Federal Rules of Civil Procedure:

> when actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 41.

Additionally, Local Rule 40.4 provides that civil cases are related if: (1) the cases involve the same property; (2) the cases involve some of the same issues of fact or law; (3) the cases grow out of the same transaction or occurrence; or (4) in class action suits, one of more of the classes involved in the cases is or are the same." L.R. 40.4(a). And, under Local Rule 40.4, a case may be reassigned to the calendar of another judge "if it is found to be related to an earlier-numbered case assigned to that judge" and so long as the following criteria are met:

> (1) both cases are pending in this Court; (2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort; (3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and (4) the cases are susceptible of disposition in a single proceeding.

L.R. 40.4(b).

## I.    The Three Cases Involve Common Questions of Law and Fact

The three cases which Plaintiffs seek to consolidate and reassign are related; they involve common questions of law and fact. *See, e.g.,* L.R. 40.4(a)(2); *Fairbanks Capital Corp. v. Jenkins,* No. 02-C-3930, 2002 U.S. Dist. LEXIS 26297 (N.D. Ill. Nov. 25, 2002); *Freeman v. Bogusiewicz,* No. 03-C-2908, 2004 U.S. Dist. LEXIS 15723 (N.D. Ill. August 10, 2004). Each of the complaints alleges as its first count violations of the Second and Fourteenth Amendments and in the second count, violations of the Fourteenth Amendment's equal protection guarantee.

The complaints also allege violations of FOPA. The resolution of these claims all necessarily involve application of the Supreme Court's recent decision in *Heller*. Thus, the legal issues involved are more than related, they are identical.

Additionally, and as set out above, the facts involved in the cases are the same. In each case, the respective municipality has in place a regulation prohibiting possession of a handgun. And, the respective Plaintiffs in each case, but for the handgun prohibitions, would lawfully obtain handguns for lawful purposes, including self-protection. The respective Plaintiffs all face arrest, prosecution, imprisonment and fines if they engage in such activities in light of the current restrictions. And, the respective Plaintiffs all claim that they are subject to the same irreparable harm in that they are unable to obtain handguns to protect themselves in their homes.

Each of the cases also involves a common Plaintiff, the NRA. Moreover, to the extent that the cases involve slightly differently worded handgun prohibitions, that fact does not prohibit consolidation and reassignment. This Court recognizes that "cases need not be absolutely identical to be related for purposes of LR 40.4. If some of the same issues of fact or law are common, that can be sufficient to establish relatedness." *Global Patent Holdings, LLC v. Green Bay Packers, Inc.,* 00-C-4623, 2008 U.S. Dist. LEXIS 33296 at **9 (N.D. Ill. April 23, 2008); *Fairbanks,* 2002 U.S. Dist. LEXIS 26297, at *7 (Rule 40.4(a) does not require complete identity of issues in order for case to be related); *Lawrence E. Jaffe Pension Plain v. Household Int'l, Inc.,* 02-C-5893, 2003 U.S. Dist. LEXIS 7466, at *4 (holding that relatedness can be shown as long as the cases "involve *some* of the same issues of fact or law) (emphasis in original). Just as in *Global Patent,* where this Court found relatedness, the complaints here "share a factual foundation." 2008 U.S. Dist. LEXIS 33296, at *9. As a result, the cases here are related.

II.    **Consolidation of the Three Cases Satisfies the Requirements
of Local Rule 40.4**

In addition to the complaints being related, consolidation of the three matters also meets
the requirements of L.R. 40.4(b): the cases are all pending in this district, their consolidation will
save judicial time and effort, reassignment and consolidation will not substantially delay the
proceedings and the cases are susceptible to disposition in a single proceeding.

First, as in *Global Patent,* one "need look no further than to the respective dockets to
conclude that the first and third conditions of LR 40.4(b) are satisfied." 2008 U.S. Dist. LEXIS
33296, at *11.  The three cases here are all pending before the Northern District of Illinois,
Eastern Division and thus, the first requirement is met.

Second, and with respect to L.R. 40.4(b)(3), the cases are all in their infancy.  *See, e.g.,*
*Teacher's Retirement Sys. of Louisiana v. Black,* No. 04-C-834, 2004 U.S. Dist. LEXIS 10259,
at *7 (N.D. Ill. May 27, 2004).  The complaints were only recently filed, little judicial effort has
been expended, no case management schedules are set and no discovery has taken place.  As a
result, the cases have not progressed to the point where treating them as related would be likely
to substantially delay the proceedings.  *See, e.g., Global Patent,* 2008 U.S. Dist. LEXIS 33296,
at *11 (finding that substantial delay from consolidation and reassignment was unlikely where no
discovery had taken place and little judicial effort had been expended).[3]

Third, the reassignment and consolidation of these cases will save judicial time and
effort.  The allegations and claims in each of the cases are virtually identical.  The cases all
involve the same constitutional and statutory issues.  To have multiple judges considering and

---

[3]    The instant motion is properly before this Court.  LR 40.4's "general commentary concerning the
timing of motions to reassign, by its terms, does not prohibit the reassignment or consolidation of cases
prior to the filing of a responsive pleading." *KPASA, LLC, United States of America,* No. 04-C-109, 2004
U.S. Dist. LEXIS 8720, at * 13 (N.D. Ill.  May 13, 2004); *Freeman,* 2004 U.S. Dist. LEXIS 15723, at
**3-4 ("L.R. 40.4(c) does not explicitly require that a motion for relatedness and reassignment be made
only after a party answers or otherwise pleads").

ruling upon the same constitutional and statutory questions is not only duplicative, but wastes this Court's judicial resources. *See, e.g., Global Patent,* 2008 U.S. Dist. LEXIS 33296, at *11 (holding that duplicative treatment of claim construction results in unnecessary consumption of judicial time, effort and cost). The cases all allege violations of the Second and Fourteenth Amendments, the equal protection guarantee, and FOPA. The cases all hinge on resolution of the same constitutional question and the application of the same recent Supreme Court case. The statutory interpretation required by the cases is identical. In short, the legal theories involved are the same and the same relevant inquiries will need to be made in addressing the allegations of each complaint.

The question of law at the heart of each case is identical: whether the handgun prohibition is constitutional and lawful. Because none of the cases can be resolved without answering the same common question of law, "significant judicial efficiency will result from having one judge handle all [ ] of the cases." *Fairbanks,* 2002 U.S. Dist. LEXIS 26297, at *8 (finding that judicial efficiency requirement met where none of the cases could be decided without determining legality of similar practice). Moreover, the cases all allege the same irreparable harm and seek identical remedies of declaratory judgment and injunctive relief.

The cases will also require the same legal findings and the summary judgment motions will likely be identical given that they will be filed by the same law firms. *See, e.g., Murry v. America's Mortgage Banc, Inc.,* No. 03-C-5811, 2004 U.S. Dist. LEXIS 3148, at *7 (N.D. Ill. Feb. 27, 2004) (finding fact that same law firm would likely file identical briefs in each case as relevant to inquiry as to whether reassignment would promote judicial economy). A substantial saving of judicial time and effort will result from having the issues briefed and determined once, rather than three times, and it will also save the parties and their counsel time and effort.

*Fairbanks,* 2002 U.S. Dist. LEXIS 26297, at *8 (holding that overall administration of justice enhances when single judge decides issue for multiple related cases). And, to the extent any discovery takes place, such would cover identical topics as would any potential expert analysis. Unlike cases where reassignment has been denied, these cases do not require individualized proof and unique defenses. *Cf., Donahue v. Elgin Riverboat Resort,* 04-C-816, 2004 U.S. Dist. LEXIS 19362, at **9-10 (N.D. Ill. Sept. 27, 2004). As a result, a unified proceeding is not only appropriate but it is also the best way for this Court to fully analyze and apply the recent precedent and to determine whether the requested relief is appropriate.

Finally, the three related cases are susceptible to disposition in a single proceeding. The cases all involve fundamentally similar claims, and anticipated defenses, that are "amenable to dispositive treatment in a unified proceeding." *See, e.g., Global Patent,* 2008 U.S. Dist. LEXIS 33296, at **12-13. As demonstrated above, because the cases involve identical constitutional claims as well as the same statute, there exists no reason to consider these cases on an individual basis. *Freeman,* 2004 U.S. Dist. LEXIS 15723, at **6-7 (finding that cases are susceptible of disposition in a single proceeding where the facts and issues in both cases are similar in nature and can be handled more efficiently in one proceeding). Additionally the irreparable harm alleged in each of the complaints, as well as the relief requested, is identical as are the questions of law presented. Therefore, resolution of the common issues in one case would be outcome determinative of the same issues in the other cases. *See, e.g, Fairbanks,* 2002 U.S. Dist. LEXIS 26297, at **9-11 (holding that LR 40.4(b)(4) was satisfied where a determination of the key, common legal and factual issues would be outcome determinative to all the cases). Resolving these cases in a single proceeding is not only plausible but, given the considerations of judicial economy, is desirable as well.

## Conclusion

*National Rifle Assoc. of America, Inc., et al. v. Village of Morton Grove, et al., National Rifle Assoc. of America, Inc., et al. v. Evanston, et al.,* and *National Rifle Assoc. of America, Inc., et al. v. Village of Oak Park, et al.,* are related cases in that they involve similar questions of law and fact.    Additionally, consolidation and reassignment of these cases is appropriate because they are all pending in this district, their consolidation will save judicial time and effort, reassignment and consolidation will not substantially delay the proceedings and the cases are susceptible to disposition in a single proceeding.    Therefore, Plaintiffs respectfully request that this Court grant the Motion for Finding of Relatedness and to Reassign and Consolidate and for such other relief as this Court deems just and appropriate to consolidate *National Rifle Assoc. of America, Inc., Alan L. Miller, Jonathan Blair Garber and Kevin P. Stanton v. City of Evansoton and Lorraine H. Morton, Mayor* Case No. 08-CV-3693 and *National Rifle Assoc. of America, Inc., Robert Klein Engler and Dr. Gene A. Reisinger v. Village of Oak Park and David Pope, President,* Case No. 08-CV-3696 with this case, as it is the earliest filed case given the exigency of a *Motion for Recusal* pending in the *National Rifle Association of America, Inc., et al. v. City of Evanston,* Docket No. 08 CV 3693 (attached hereto as "Exhibit 4").

Dated:  July 25, 2008                    Respectfully Submitted,

                                **NATIONAL RIFLE ASSOCIATION**
                                **OF AMERICA, INC., JONATHAN BLAIR**
                                **GARBER, ALAN L. MILLER and**
                                **KEVIN P. STANTON,**
                                Plaintiffs


                        BY:___s/ William N. Howard_____
                                One of Their Attorneys

9

Local Counsel:
William N. Howard, Esq.
**FREEBORN & PETERS LLP**
311 S. Wacker Dr., Suite 3000
Chicago, Illinois   60606
(312) 360-6415

Stephen P. Halbrook, Esq.
10560 Main St., Suite 404
Fairfax, VA  22030
(703) 352-7276
(*Pro Hac Vice pending*)

# EXHIBIT "1"

# Two Judges Look at Gun Control

## By the Honorable David J. Shields*

The right to possess firearms, and particularly handguns, has become a controversial issue in our current society. The criminal laws now existent on these questions are generally prosecuted in a police court atmosphere, known colloquially in Chicago as the "Gun Court." The cases handled in the Gun Court are not generally those in which a gun is used in the commission of a crime, nor do they involve the felonious use of altered, sawed-off, automatic or repeating weapons. Almost all its cases involve the possession of handguns and the alleged violations of the various gun registration statutes and ordinances.[1]

The most common case handled is that known by the practicing attorneys as a "UUW" (Unlawful Use of Weapons).[2] The one "use" contemplated is only possession, which, under Illinois law, becomes criminal when a gun is concealed from ordinary view and when the person in possession is not on his own property or fixed place of business.[3] This concealed possession is a criminal offense whether the gun is loaded or not.[4] Possession of a gun anywhere—except on the possessor's property or business—is unlawful if it is loaded, whether or it is concealed or not.[4] For emphasis, and because of a widespread public misunderstanding in this area, it should be noted that it is a criminal offense to carry or possess a firearm in such fashion whether it is registered or not. Registration of a gun, or registration by an individual as a gun owner, invests the registrant with no further authority whatsoever regarding the right to carry a gun under Illinois law. This fact is often misunderstood, and registration is the "defense" initially argued by most so-called good citizens when apprehended with a loaded gun in their possession or in their car.

The state of Illinois has not enacted a gun registration law, but it does require, by state statute, that an owner or possessor of a firearm be registered as such.[5] Very few municipalities in Illinois have enacted gun registration ordinances, but the city of Chicago has such an ordinance.[6] Every weapon of every kind must itself be registered under the Municipal Code of Chicago and, until recently, any violation thereof called for a penalty ranging from a minimum fine of $100 to a maximum of $500. The Chicago City Council has recently enacted an amendment to the city code which calls for a mandatory and minimum ten-day jail sentence for violation of the registration ordinance.[7]

Very few cases have come to the Gun Court under this amended ordinance to date; there seems to be some ambiguity within its terms, suggesting that the mandatory aspect might apply only to persons ineligible to register a firearm. Although the legislative intent of the City Council seems to have been in favor of a uniform and mandatory jail sentence, the ordinance will probably be selectively prosecuted until an appellate level interpretation of it can be obtained.

The primary area of contest in most gun cases is under the fourth amendment to the Constitution in the area of search and seizure. There is little argument directed to whether a gun found is in fact an operable gun or whether it is intentionally possessed. Constitutional search and seizure issues are probably more regularly argued in the Gun Court than anywhere in America. We have literally some several hundred cases on the call every day, and probably more than half of those contested begin with a motion to suppress evidence allegedly seized in violation of the defendant's constitutional protections. Most of the cases involve street stops, traffic stops, pat-downs, "stop and frisk," consent searches and the alleged complaints of unknown citizens. Without getting into the morass of law that attends these questions of search and seizure, particularly since the celebrated *Robinson* and *Gustafson* decisions in the U.S. Supreme Court, it should suffice to say that these arguments dispose of more contested matters than any others. Generally speaking, if the evidentiary motions are resolved against the defendant, the cases become pleas of guilty.

Among some other and customary defenses to gun charges, within the statute, are questions of accessibility and operability. A gun has to be accessible. A gun has to be immediately accessible to a defendant to sustain a conviction. Accordingly, a gun in a case, in the glove compartment of a car, in a trunk, in a back seat, or perhaps even under a front seat, may not be accessible; nor is a gun that has been broken down or disassembled to any material degree, nor a starter pistol or some other gun which is incapable of propelling a missile, competent to sustain a prosecution. In the registration area, if a defendant makes no admissions to the police regarding registration, a substantial burden is imposed on the prosecutor's office to prove up this failure of registration, as the testimony of any one other than the person charged with the actual registration responsibility is probably more than half of those about the existence of registration is hearsay.

In Illinois, another defense is employed—and, I think, abused—by so-called security guards. A security guard has authority to carry his gun to and from his work and is given one computing hour in each direction to do so.[10] As you can imagine, particularly in such a high volume court, it is difficult for a prosecutor to refute the testimony of a licensed security guard, coupled with that of his purported supervisor, that he was on his way home from a watchman assignment at some remote industrial site, at some irregular hour of the night or early morning —particularly when the defendant has said nothing to the police officer at the time of the arrest to alert the prosecutor that such a defense might be presented. There is such a proliferation of security guards, special police and watchmen services, and such an abundance of stars, credentials and uniforms, that this entire area should have some closer legislative attention.

In no way do I mean to suggest that every defendant in the gun courts should not have these defenses avail-

*This article is adapted from the author's testimony before Congress.



JUDGE DAVID J. SHIELDS has been sitting on Chicago's "Gun Court" for some time. Before his appointment as an associate judge in 1971, he had been practicing law in Chicago for sixteen years and was a partner in the firm of Ryan, Condon & Livingston. He graduated from De Paul University Law School and is currently an instructor in litigation in various academic institutions and programs.

able to him. Most defendants are represented by competent counsel. Those who cannot afford private counsel have the services of a very able public defender's office which is aware of the cases in this specialized area. Recently the Chicago Bar Association has had a lawyer assigned to the court for referral purposes, and to avoid the always existent problem of solicitation by and for lawyers in the halls of the building. Very seldom does any person appear before the bench without a competent attorney.

As in all criminal courts, a defendant is entitled to ask for one continuance almost as a matter of law. By custom, the state is given at least that same courtesy. Further continuances are sought for various and obvious reasons and are addressed to the discretion of the court. Every defendant in a criminal case is entitled to a trial by a jury, unless he understandingly waives the jury trial. The Gun Court has no jury facility. The insistence by a defendant upon his right to a jury trial in effect

gives him another continuance, so the case may be transferred to a court with a jury facility, which is probably also backlogged. However, if the insistence on a jury trial is patently dilatory, the administrative offices of the court have made immediate juries available, and this threat has substantially lessened the number of spurious jury demands. Evidence is sometimes tied up in the crime labs, particularly if the gun was stolen or was used in another incident. For countless valid reasons, cases get continued, witnesses and complainants get discouraged and frustrated and often refuse to further participate—so that, after several further state-continuances to get the complainants in, the cases are stricken from the call or dismissed.

In those cases that are tried on the merits, the convictions far exceed those discharged. Many are pleas of guilty, but, in view of the lawyers involved on both sides, very seldom, if ever, is there a blind plea. The cases are negotiated or plea-bargained; an agreed

We invite accounts of

## GUARDIANS, CONSERVATORS, EXECUTORS & ADMINISTRATORS

Secure an excellent return and unquestioned safety by depositing in Talman where your fluctuation-free investments are insured up to $40,000. We pay interest from date of deposit to date of withdrawal.

Let us give you the facts by phone, letter, or in person at our main office, or at any of our convenient locations.



## TALMAN
### Federal Savings & Loan Association



One N. Wacker Dr., Chicago ■ 22W151 Butterfield Rd., Glen Ellyn ■ 10000 Skokie Blvd., Skokie ■ 6720 W. Roosevelt Rd., Oak Park ■ 1010 N. Meacham Rd., Schaumburg ■ 4046 W. 111th St., Oak Lawn

disposition is proposed to the court for its approval and, when fairly negotiated, it is seldom disapproved. In past years, some defendants in selected cases were placed on court supervision. This meant that their cases were continued for specific lengths of time without disposition and then discharged if the defendant, usually a young person, didn't get into any further difficulty this obviously avoided his having any criminal record. Such dispositions are no longer made of cases in the Gun Court. There are no orders of supervision whatsoever.[11]

Heretofore the customary minimum disposition on a case wherein the defendant was in court for the first time and found guilty has been one year on probation, a fine, usually $100, and the confiscation and destruction of his weapon. Unlawful Use of Weapons cases arising since October 1, 1975, however, are subject to a new and experimental minimum and mandatory jail sentence of at least one day in custody, in addition to the day of arrest.[12] This amendment providing for mandatory incarceration is admittedly an experiment. Up to this point, before cases are presented under the new ordinance, the city registration violations have yielded additional monetary fines of not less than $100 per weapon. Anything of an aggravating nature in his background or in the facts of the case would increase the penalties. Anyone with a conviction of a gun-related case in the prior several years would get a jail sentence, without exception. The prohibition given the first offender includes the usual impositions on his time and freedom, and is sometimes conditioned on periodic imprisonment,

participation in specified programs and other efforts at creative sentencing.

Jail sentences for second offenders in the Gun Court are the rule rather than the exception. A second conviction arising within five years after a felony conviction or release from a penitentiary can be prosecuted as a felony.

Probably the most striking experience that one takes away from Gun Court is awareness of the kinds of people who appear there as defendants. For most, it is their first arrest; many are old people. Shopkeepers, persons who have been victims of violent crimes and others who carry guns because of a sincere belief in their need for protection—these constitute the greatest part of the call. Their attitude is probably best summed up by an elderly defendant in a recent case. Asked why he carried a gun when he knew it was against the law, his response was, "I'd much rather be caught by the police with a gun than be caught out on the street in my neighborhood without one."

Most readers of this article would not go into ghetto areas except in broad daylight under the most optimum circumstances—surely not at night, alone or on foot. But some people have no choice. To live or work or have some need to be on this "frontier" imposes a fear which is tempered by possession of a gun. The very argument most gun advocates advance, that of self-protection, is certainly much more appropriate in the black community of Chicago than in the isolated suburbs, in which it is usually heard. The judiciary is seriously concerned about putting someone in a ghetto area on probation,

because one condition of probation is that the offender cannot have a weapon during the probationary period—yet if he follows the law, he is without protection in his home or store or on the streets of his community.

These remarks, admittedly subjective, are being made to put the role of the courts on the gun problem into proper perspective. A police court should not make the law, nor should it enforce the law. It should be a forum to determine whether the law enforcement authorities have acted within the bounds of propriety. The enactment of absolutes, the total abolitions, the mandatory sentences, the harsh penalties are laudable for their intent, but they must be enforced in a humane atmosphere. The constitutional defenses, the rules of evidence, the ingenuity of the adversary system will always be available to the accused and all the nuances of an accused, whatever the charge.

While this writer, personally and as a citizen, advocates a uniform ban on the sale or manufacture of handguns and the eventual exclusion of guns from our society as a simplistic answer to the problem, he recognizes that the courts have to follow the law. It is sincerely believed that legislation to ban firearms from society would have little real effect upon the problem; it would, in fact, criminalize a substantial number of persons who are not part of the problem. Although the usual criticisms can be expected, the conscientious application of the law by competent jurists, using severity when appropriate, would seem more likely to contribute to the concept of uniform justice.

Footnotes

1. General Orders of Municipal Department, Circuit Court of Cook County, Illinois; General Order 75-8(M); General Order 78-5(M).

2. Ill. Rev. Stat., ch. 38, § 24-1(a)(10) (1973). See also People v. Colson, 14 Ill. App. 3d 685, 302 N.E.2d 156 (1st Dist. 1973); People v. Colson, 14 Ill. App. 3d 302, 305 N.E.2d 409 (1st Dist. 1973); People v. Grant, 57 Ill. 2d 264, 312 N.E.2d 276 (1974); People v. Reese, 512 N.E.2d 353, 398 N.E.2d 444 (1st Dist. 1972); People v. Taylor, Ill. App. 3d 186, 328 N.E.2d 189 (1st Dist. 1973).

5. Ill. Rev. Stat., ch. 38, § 83-2(a) (1973).

6. City of Chicago, Chicago, Ill., Municipal Code, ch. 11.1-17. "Any person who violates any of the sections of the Chapter shall upon conviction thereof be punished by a fine of not less than $100.00 nor more than $500.00 for the first offense and not less than $500.00 for the second offense and not less than $500.00 for the second offense ..."

7. Ill. Rev. Stat., ch. 38, § 11.1-18. "A person may not possess or harbor any firearms, whether concealed or not concealed, if such person is ineligible to register any firearms with the licensing authority pursuant to the provisions of this Chapter and possession of such firearms by any person shall be a misdemeanor..."

9. People v. Bastion, 19 Ill. App. 3d 772, 312 N.E.2d 795 (1st Dist. 1974); People v. Zuzzetti, 6 Ill. App. 3d 858, 286 N.E.2d 745 (1st Dist. 1972); People v. Adams, 73 Ill. App. 220 N.E.2d 17 (1st Dist. 1962).

10. Ill. Rev. Stat., ch. 38, § 24-2(a)(4) (1973).

11. There is no statutory authority for this statement, but it has been a matter of policy agreed upon, by and between the judges sitting in the Gun Court since January 1, 1975.

12. Ill. Rev. Stat., ch. 38, §§ 24-1(b), 1005-5-3(d)(3), 1005-8.5(a)(1) (Supp. 1975).

186

By the Honorable Marvin E. Aspen[*]

"Wonderful news from the corner drugstore: an exciting and informative new magazine has just hit the racks and is available all across the country.

"The magazine is called 'Guns for Home Defense.' It is published by the same company that puts out 'Guns and Ammo' magazine, and it marks a breakthrough in the literature of firearms. While in the past, publishers of this gun magazines have always claimed that they really were only providing a service for sportsmen, those hardy adventurers who like to kill animals, this new publication finally comes right out and says it: The magazine is designed for people who want to know how to shoot other people."[2]

The above quote from Bob Greene's recent column in the Chicago Sun-Times highlights the widespread misconception that possession of handguns is an effective means of home defense against a potential felon. It also illustrates the calculated exploitation of this misconception by some self-interest groups.

I have been interested in handgun control legislation for many years—as prosecutor, as draftsman of several legislative gun control proposals, and as a judge of the Circuit Court of Cook County, assigned to the Criminal Division. Therefore, I freely confess to a bias in favor of new federal gun control legislation. I confess, too, that never cease to be amazed that the overwhelming majority of Americans who favor such legislation[1] are continually frustrated by a minority-interest gun lobby.

Rather than recite what I believe to be the overwhelming and convincing statistical data showing the cause and effect relationship between the availability of handguns and the increase in crime,[3] I will attempt to dispose of one emotional and frequently recited myth created and propounded by gun control opponents.[4] The myth goes something like this: "Gun control legislation will disarm the law-abiding citizen, leaving him the helpless prey of the crook, who will not be affected by that legislation."

My response to this contention, although statistically supportable, is based primarily upon my courtroom observations over the past four years, where more than a thousand accused felons have appeared before me for trial.

I do not contend that the enactment of a federal ban on handguns will be an immediate panacea for our spiraling crime rate. However, I do believe that a strong federal gun control bill will—in the long run, not overnight—disarm the criminal. State and local legislation, in my opinion, has been, and will continue to be, ineffective. Finally, I also believe that the law enforcement needs of the law-abiding citizen are not best served by possession of a firearm.

Restricting or banning the sale and possession of handguns to the general public will have, I believe, a tangible effect on the rate of criminality. First, such legislation would create an absolute liability crime for which to charge the criminal who is caught in possession of a handgun, this alone is bound to aid law enforcement. But

ARE YOU A THINKER?

IF YOU ARE, you will want to study the Chicago Bar's NEW Group Life Program . . .

EVIDENCE OF INSURABILITY WAIVED

New association members under 40 years of age will be assured of one $10,000 unit of insurance regardless of their past or present health condition providing they apply within 61 days after becoming a member of the Chicago Bar Association. Dependents' insurance, if applied for, will be issued regardless of their past or present health conditions upon acceptance of the member's application.

The plan is administered by

MODERN ADMINISTRATORS, INC.
P.O. Box 253, South Holland, Illinois 60473

187

188

more important, restricting the importation and interstate sale of handguns will dry up the potential arsenal readily available at the local gun shops to the criminal and the potential criminal.[9]

Reducing or eliminating the ownership of handguns by private citizens will also serve to reduce this potential arsenal. It is my impression that a significant number of handguns used in crimes are taken in burglaries from the homes and businesses of law-abiding citizens. This impression is supported by responsible research, which shows that 500,000 guns are stolen every year from homes and businesses.[9] Therefore, it is clear to me that the criminal, whether or not he initially turns in his handgun, will, in the long run, be adversely affected by the proposed federal legislation.

Next, it is important to analyze what, if any, law enforcement or self-defense good would be undermined by disarming the general public. Far more weapons kept by citizens for self-defense are in fact eventually used for purposes of crime rather than for self-defense. The statistics are clear that significantly more weapons purchased for home protection are eventually used by the purchaser in a "heat of passion" shooting, in a suicide, in an accidental shooting, or are stolen from him and used to perpetrate a crime rather than to prevent one.[10] These same statistics also show that the armed citizen is more likely to be shot by a felon than the unarmed victim.[11] Every judge and law enforcement officer knows of numerous instances where the handgun of a law-abiding citizen was torn away from him and used against him by a criminal. No responsible law enforcement officer

would argue that weapons in the private sector have been significantly effective in combating crime. On the contrary, weapons in the private sector pose a constant threat to the law-abiding citizen.[12]

There are other well-documented harmful aspects to the widespread possession of handguns by the law-abiding citizens.

In my courtroom I have seen countless murder and aggravated battery cases which began with a domestic quarrel and escalated into a killing or attempted killing because of the ready availability of a firearm. Statistics show that almost three out of four murders evolve out of domestic quarrels or quarrels between persons who know one another.[13] In Chicago in 1974, for example, 525 out of 970 murder victims knew their murderers as relatives, friends or neighbors.[14] Three-quarters of all murderers have never broken the law before.[16]

In most of these murder cases, I am convinced that if no handgun had been available in the apartment or home, we would be dealing, at the very worst, with broken bones or knife wounds rather than with lost lives. For example, a spontaneous knife-wielder is only 20 percent as fatal as a gun-shooter,[16] since the use of a knife requires considerably more strength, agility and skill than the use of a gun. Therefore, the argument that people would find other ways to kill each other if guns were not available just does not hold water.

The accident rate with handguns is equally significant. How many times this past year have we picked up a newspaper and read of the tragedy of a child discovering a supposedly

## TAKE ADVANTAGE OF YOUR MEMBERSHIP

### IN

### THE CHICAGO BAR ASSOCIATION

### Investigate the Savings of the

### 5 GROUP PLANS AVAILABLE

1. **THE GROUP DISABILITY PLAN—**
Provides up to $1,732.00 monthly in the event of disability caused by Sickness or Accident. A sickness plan to age 65 is available.
★ A special rate reduction for those under age 35.

2. **THE BASIC MAJOR MEDICAL EXPENSE PLAN—**
In or out of Hospital Benefits up to $25,000.00 per Disability. Up to $100.00 Gross Daily Hospital Room and Board maximum. Subject to choice of deductible and 80% coinsurance.

3. **EXCESS MAJOR MEDICAL PLAN—**
Covers up to $300,000 for Medical Expenses. Supplements any Major Medical Plan and is available with a $15,000, $20,000, or $25,000 Deductible. Truly catastrophic coverage.

4. **EXTRA CASH—IN HOSPITAL PLAN—**
Ideal supplement to any Basic Hospital or Major Medical Plan. Liberal pre-existing clause. Up to $50.00 daily in-hospital benefit available. Benefits paid direct to you regardless of other medical insurance.

5. **THE GROUP ACCIDENTAL DEATH AND DISMEMBERMENT PLAN—**
A 24 hour world wide accident plan. Includes all travel accidents.
★ Your Wife and Children and your Employees are also eligible
★ Low annual cost—80¢ per each $1,000.00.

YOUR EMPLOYEES ARE ALSO ELIGIBLE TO APPLY.

*Write or Telephone Today!*

**PARKER-ALEXANDER & COMPANY**
Professional Administrators

9933 Lawler Ave., Skokie, Ill. 60076 • Telephone (Skokie) 676-1000

189

secreted handgun and accidentally shooting and killing a brother, sister or another child? There are 3,000 accidental deaths by firearms each year, and one-fourth of the victims are children 13 years of age or younger. Consider also that for every intruder who is stopped by a home-owner with a gun, there are four accidental shootings, caused either by mishandling the weapon or by mistaking an innocent person for a criminal.

Again: no nation in the world has a firearms suicide rate higher than ours. Guns are used in half of all the suicides in the United States; that is, about 10,000 people shoot and kill themselves each year. I am not suggesting that an individual who truly wishes to take his life will be deterred by the unavailability of a firearm. But one must wonder how many spur-of-the-moment suicide attempts by depressed and troubled individuals might have been avoided if, at that particular moment, no firearm was available. Or

think of the attempts at suicide in which means other than firearms were used—how many lives might have been saved by stomach pumps, artificial respiration, and other first aid! How many victims could have survived if they had not resorted to the finality of a bullet to the head!

To reiterate, it is my opinion that federal legislation banning or restricting the sale, manufacture and possession of handguns to persons other than law enforcement officers will, in the long run, disarm the criminal; and that the law-abiding citizen, when all considerations are balanced, has much to gain and very little to lose by this legislation.

I believe the handgun problem in this nation has reached crisis proportions. There are an estimated four million handguns now in the United States—a number growing by 2.5 million each year. We can no longer avoid coming to grips with the over-



JUDGE MARVIN E. ASPEN has served for more than four years in the Criminal Division of the Circuit Court of Cook County. He is a part-time faculty member at the Northwestern University School of Law, and is serving as chairman of the Advisory Board of the Institute for Criminal Justice of the Illinois Institute of Technology. Judge Aspen has authored three legal texts as well as articles in numerous legal periodicals, and has chaired several bar association committees. He is currently serving on the Board of Editors of the Chicago Bar Record.

whelming statistical evidence that incriminates the promiscuous proliferation of handguns in our country. If we ignore the problem it will not make it go away. It will get worse. We should not mortgage the public safety of this nation by ignoring the desires of an overwhelming majority of our citizens for responsible federal gun control legislation because of the loud advocacy of a handful of pistol-packing enthusiasts who view any federal action[24] as unacceptable, no matter how great the public need.[24]

Footnotes

1. This paper, adapted from the author's testimony before Congress, does not purport to be a definitive discussion of handgun legislation, or the pros and cons of such legislation. Rather it is an attempt to answer, by way of the perspective of the bench, to one of the most frequently proffered arguments against gun control legislation.

2. Chicago Sun-Times, Jan. 25, 1976, at 10, col. 1.

3. It is important to define the scope of the proposed legislation. I am not advocating the banning of all firearms, only handguns. Rifles and shotguns have sporting and hunting purposes. Handguns can be readily concealed, are designed to be, in most part, used, for a single purpose: to shoot people.

4. As Congressman Abner Mikva noted on April 14, 1975, during congressional Hearings in Chicago, "Every public opinion poll most frequently shows that strong controls . . . Americans favor gun control." Hearings on Firearms Legislation Before the Subcomm. on Crime of the House Comm. on the Judiciary, 94th Cong., 1st Sess. (1975) [hereinafter cited as 1975 Hearings]. These hearings were held in Atlanta (June 16), Boston and Denver (June 17, 18, 20, 27, March 5, 6, 13, 20, 25); February (Detroit), June 9 and 10; Part 4 (Cleveland), June 16); June 17 and 15; Part 3 (Atlanta), July 21; Part 7, June 23; Part 8 (Washington), May 14; July 17, 25; See also Hazel Erskine, The Polls: 33, 24, September 24 and October 1; The Gun, Gun, 37 Public Opinion Quarterly 455, 535, Part 8 (Washington), July 25; See also Hazel Erskine, The Polls: 33 (Fall 1973); Franco Opinion Quarterly Rackino, New York Times Nationwide 10, The Gallup Poll, Field Newspaper Syndicate, Chicago, Illinois, June 5, 1975.

5. Drake & Aultani, HANDGUN CONTROL, 1975 (U.S. Conference of Mayors), at 7 [hereinafter cited as Drake].

6. Massachusetts Council on Crime and Correction, A Shooting Gallery Called America 5 (1975) [hereinafter cited as Mass. Council]. See also Drake, supra note 5 at 1.

7. Another equally untenable argument advocated by gun control legislation is that the second amendment to the United States Constitution prohibits governmental gun control. See the individual's "right to bear arms," with this argument raised repeatedly in spite of its rejection by the courts. See, e.g., U.S. v. Cruikshank, 92 U.S. 588 (6th Cir. 1973); Eckert v. City of Philadelphia, 477 F.2d 610 (3d Cir. 1973); Burton v. Sills; Lee, 216 Kan. 495, 532 P.2d 1292 (1975), reiterated that the second amendment refers to the people as a collective body, and that there is no absolute constitutional right of an individual to possess firearms.

There is a third argument often voiced by opponents. It is phrased in one of two ways: (1) gun control is a local problem and the federal government should keep hands off; or (2) local gun control laws do not work, so why have federal law? The answer to both parts of this argument is the same: local gun control laws do not succeed because of the ready availability of guns in jurisdictions, which is precisely why federal gun control is needed. See 1975 Hearings at 4.

8. Testimony on April 14, 1975, of Richard J. Daley of Chicago and the Special counsel for Gun Registration, Francis P. Kane.

9. Lindsay, The Case for Federal Firearms Control (The Criminal Justice Coordinating Council of New York City, 1973) [hereinafter cited as Lindsay].

10. Drake, supra note 5 at 8.

11. NEWTON & ZIMRING, FIREARMS AND VIOLENCE IN AMERICAN LIFE (1969) [hereinafter cited as NEWTON & ZIMRING].

12. See remarks of Chicago Superintendent of Police James M. Rochford before the Chicago City Council Committee on Police, Fire, Civil Service, Schools and Municipal Institutions on October 11, 1974. In July 1972, Charles R. Gain, Oakland Chief of Police, testified, "Ownership of handguns is, at best, a futile step and, at worst, an immediate hazard to the people who seek to protect themselves."

13. Chicago Daily Law Bulletin, February 24, 1976 [hereinafter cited as Chicago Daily Law Bulletin (1976)].

14. FBI Uniform Crime Statistics (1972).

15. Chicago Police Department Statistics (1974).

16. Lindsay, supra note 9.

17. Lindsay, supra note 11 at 44.

17. BAXAL, No RIGHT TO BEAR ARMS (1908).

18. Lindsay, supra note 9. See also Newton, supra note 11 at 64.

19. Miss. Council, supra note 6 at 4.

20. ...

21. Proposed federal gun control legislation would exempt from its provisions those groups in addition to the military, private clubs, antique dealers, and pistol clubs where guns would be kept on the premises under secured conditions.

22. Chicago Daily Law Bulletin, April 7, 1975, at 1, col. 3. Attorney General Edward Levi's statement of April 6, 1975.

23. On February 9, 1976, the House Judiciary Committee, by a 25-8 vote, killed a nationwide gun control bill that would have imposed federal legislation on all handguns except for those owned by the police. Chicago Daily Law Bulletin, February 10, 1976, at 1, col. 9. On February 17,

1976, the same committee defeated, by an 18-10 vote, a proposed handgun registration law. Chicago Daily Law Bulletin, February 18, 1976, Sec. 1, at 5, col. 1. On February 23, 1976, this same committee voted 18-14 to ban the manufacture and importation of small, easily concealable handguns such as "Saturday night specials." Chicago Daily Law Bulletin, February 24, 1976, at 1. Undoubtedly, if ultimately unsuccessful as to passage before the House, however, the prognosis for passage in the current term, or the same types of gun control legislation will be offered again in the next session of Congress.

24. Judge Shields in his companion article concludes that "legislation to ban firearms from society would have little effect upon the criminal; it would, in fact, criminalize a substantial number of persons [otherwise law-abiding citizens] . . . [otherwise] handguns for personal protection] who are not part of the problem." I, of course, disagree, for the reasons stated in this article. And I agree with Judge Shields that handgun control is not the only premise; that handgun control would be one of the effective means, as to his second premise, the enforcement of gun control laws would have to otherwise law-abiding citizen within the framework of the criminal justice system for individuals. However, the only effective manner of drying up handguns as the only effective means is to apply any proposed law uniformly and fully. This does not mean that a judge who had a "good point" first-time gun offender in his sentence should put him in jail for otherwise "throw the book at him." It does give such a person a "pass" and refuse to consider under a proposed federal law banning handguns.

## Consumer Redress and the FTC

**By Raymond J. Jast**

Not too long ago the Federal Trade Commission was affectionately known around the nation's capital as the "Little Old Lady of Pennsylvania Avenue." But the original Nader's Raiders, after examining the Commission, concluded it was so ineffective in fulfilling its antitrust and consumer protection missions that unless it was going to be completely redirected it ought to be abolished. Shortly thereafter, a blue ribbon panel formed by the American Bar Association issued a report which echoed the Nader study and recommending that the Commission either be reformed or quietly be put to rest.

The Commission's "Little Old Lady" label of the 1960's, however, has since given way to a new reputation—that of being an aggressive law enforcement agency. This newly acquired tough-guy image has been earned, in part, by its efforts to develop remedies on the consumer protection front which go beyond the simple "go and sin no more" cease-and-desist order. In recent years, the Commission has explored such novel relief measures as corrective advertising, contract reformation and restitution as means of putting teeth into its cease-and-desist orders. I think it is fair to say that notwithstanding the Commission's recent decision on corrective advertising in the Listerine case, restitution has

emerged as the most important of the novel remedies and the one which will be most significant in the future.

The pioneer case in the restitution area was the Commission's 1971 decision in Curtis Publishing.[2] Although the Commission did not ultimately order Curtis to refund money to subscribers of the defunct Saturday Evening Post, the opinion written by Commissioner Dixon stated that the Commission believed itself to be possessed of such power. The question of whether it had the authority to order unfair or deceptive trade practices finally came to a head in FTC v. Heater.[3] There the Ninth Circuit ruled that, while the Commission could order a party to cease and desist from using unfair or deceptive acts or practices, it could not also order restitution of the money obtained through such conduct. Although sympathizing with the Commission's desire to prevent wrongdoers from escaping with their ill-gotten gains, the court said it was up to Congress to grant it such kind of remedial power. The Ninth Circuit's Heater opinion came down in September 1974, and by the time the following New Year's Eve hangovers had finally disappeared, Congress had in fact stepped into the breach in what has been described as "one

152

14. 50 Ill. 2d 136, 277 N.E.2d 878 (1972).
15. Ill. Rev. Stat., ch. 111½, § 73 (1973).
16. Ill. Rev. Stat. ch. 15½, § 22.69 (1973).
17. Ill. Rev. Stat. ch. 32, § 157.148 (1973).
18. Ill. Rev. Stat. ch. 48, § 137.7-18 (1973).
19. Ill. Rev. Stat. ch. 102, § 16 (1973).
20. Ill. Rev. Stat. ch. 73, § 802 (1973).
21. Ill. Rev. Stat. ch. 46, §§ 6-47 and 9-52 (1973).
22. Ill. Rev. Stat. ch. 57, § 19 (1973).
23. Ill. Rev. Stat. ch. 120, § 718 (1973).
24. Ill. Rev. Stat. ch. 120, §§ 382, 386 (1973).
25. Ill. Rev. Stat. ch. 120, § 619 (1973).
26. Ill. Rev. Stat. ch. 120, § 432a (1973).

27. Ill. Rev. Stat. ch. 120, § 372.4 (1973).
28. Ill. Rev. Stat. ch. 4, § 9.1-20 (1973).
29. Ill. Rev. Stat. ch. 48, § 172.54 (1973).
30. Ill. Rev. Stat. ch. 15½, § 88.18 (1973).
31. Ill. Rev. Stat. ch. 133, § 14 (1973).
32. Ill. Rev. Stat. ch. 94, §§ 9-2,115 9-2-123, ch. 34, §§ 2716, 2743 (1973).
33. See People v. Taylor, 50 Ill. 2d 136, 277 N.E.2d 878 (1972); People v. Jones, 40 Ill. 2d 66, 327 N.E.2d 495, 498 (1968).
34. Ill. Rev. Stat. ch. 37, § 704.3 (1973).
35. Ill. Rev. Stat. ch. 37, § 705.3 (1973).
36. Ill. Rev. Stat. ch. 7, Title and § 8 (1973).
37. Ill. Rev. Stat. ch. 59, § 13 (1973).
38. Ill. Rev. Stat. ch. 87, § 2 (1973).

## OFFICERS

John Cadwalader Menk, *President*
Kenneth C. Prince, *First Vice President*
Esther R. Rohstein, *Second Vice President*
David C. Hilliard, *Secretary*
James E. Caldwell, *Treasurer*
Ralph P. Ozmon, *Librarian*

## BOARD OF MANAGERS

John D. Hayes
Thomas Z. Hayward, Jr.
Nina C. Neal
Philip M. Citrin
Kevin J. Gillogly
James L. Harris
John Eugene L. Wachowski
Richard W. Austin
William M. Gibbons
Arthur J. Grossman
George Kelm

## BOARD OF EDITORS

Kevin M. Forde, *Editor-in-Chief*
Hon. Marvin L. Aspen
Vivienne B. Conlon
Joan Conroy Haney
Gordon Henry
Robert E. Levin
Arthur M. Martin
Gary L. Mason III
Francis D. Morrissey
William R. Quinlan
William M. Stikas
Edward T. Wall

## SENIOR STAFF

Terrence M. Murphy, *Executive Director*
Evan F. McBride, *General Counsel*
Joan McCarthy, *Continuing Legal Education*
Stanley Dutton
Lorie J. Nies, *Assistant Editor*
Stephen Czka, *Assistant Secretary*
Pauline Ash, *Executive Librarian*
Frances Engelbrecht, *Dining Rooms Office Manager*



# chicago bar record

published bimonthly by
The Chicago Bar Association
29 South LaSalle Street
Chicago, Illinois 60603

Single copies $1.00, $4.50 per year

Copyright © 1976 by
The Chicago Bar Association

All Rights Reserved

Second-Class Postage Paid at Chicago, Illinois

As its official publication this magazine carries authoritative information about the activities of The Chicago Bar Association. Neither the Association nor the Editors, however, assume responsibility for statements or expressions of opinion by contributors.

# Contents

President's Page .................... 154
  *John Cadwalader Menk*

Footnotes and Dicta ................. 156
  *Kevin M. Forde*

Comments on Current Problems Facing the Legal Profession (Part II) ... 159
  *Justin A. Stanley*

Immunity, Right or Wrong? Right! .... 168
  *The Honorable Samuel K. Skinner*

Immunity, Right or Wrong? Wrong! ... 174
  *The Honorable Warren D. Wolfson*

Two Judges Look at Gun Control ..... 180
  *The Honorable David A. Shields*
  *The Honorable Marvin E. Aspen* .... 186

Consumer Redress and the FTC ....... 193
  *Raymond J. Jost*

## CLASSIFIED AD

Young attorney is interested in employment with Chicago law firm or corporation. Master's degree in international business. Bilingual in Spanish and English. Write Apartment 1E, 613 Hinman Avenue, Evanston, Illinois 60202.

Classified ads are now being taken for publication in the *Chicago Bar Record*. Individuals, firms or organizations interested in classified advertising may telephone Lorie J. Nies at the Chicago Bar Association headquarters, 312/782-7348. So call today!

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., ALAN L. MILLER JONATHAN BLAIR GARBER, and KEVIN P. STANTON, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 08 CV 3693 |
| CITY OF EVANSTON, and LORRAINE H. MORTON, Mayor, | ) ) ) | Judge Aspen |
| Defendants. | ) | |

## NOTICE OF MOTION

To:   See Attached Service List

**PLEASE TAKE NOTICE** that on the **31st** day of **July, 2008 at 10:30 a.m.**, or as soon thereafter as counsel may be heard, we shall appear before the Honorable Marvin E. in Room 2568 of the United States District Court for the Eastern Division of Illinois, or whomever may be sitting in his place and stead, at the Dirksen Federal Building, 219 South Dearborn Street, Chicago, Illinois, and then and there present: **Motion for Recusal**, a copy of which is attached hereto and hereby served upon you.

Respectfully Submitted,

**NATIONAL RIFLE ASSOCIATION
OF AMERICA, INC., JONATHAN BLAIR
GARBER, ALAN L. MILLER and
KEVIN P. STANTON,**
Plaintiffs

BY:   s/ William N. Howard
         One of Their Attorneys

Local Counsel:
William N. Howard, Esq.
**FREEBORN & PETERS LLP**
311 S. Wacker Dr., Suite 3000
Chicago, Illinois   60606
(312) 360-6415


Stephen P. Halbrook, Esq.
10560 Main St., Suite 404
Fairfax, VA  22030
(703) 352-7276
(*Pro Hac Vice pending*)

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys of record for Plaintiffs, certifies that he caused a

copy of this instrument referenced herein to be delivered to LaSalle Process Servers to obtain

service upon the parties of record, as shown below, the 25rd day of **July, 2008**:

| | |
|---|---|
| City of Evanston | Lorraine H. Morton, Mayor |
| c/o Lorraine H. Morton, Mayor or City Clerk | City of Evanston |
| 2100 Ridge Ave., Rm. 2500 | 2100 Ridge Ave., Rm. 2500 |
| Evanston, IL 60201 | Evanston, IL 60201 |

s/ William N. Howard

Local Counsel:
William N. Howard, Esq.
**FREEBORN & PETERS LLP**
311 S. Wacker Dr., Suite 3000
Chicago, Illinois 60606
(312) 360-6415

Stephen P. Halbrook, Esq.
10560 Main St., Suite 404
Fairfax, VA 22030
(703) 352-7276
(Pro Hac Vice pending)